CASE 103.—ACTION BY C. B. HAWKINS, &c., AGAINST THE
FIDELITY TRUST COMPANY.—January 12, 1906.

## Fidelity Trust Company v. Hawkins, &c.

Appeal from Woodford Circuit Court.

From the judgment the Trust Co. appeals.—Affirmed.

Trusts—Authority of Trustees—Mortgage—Protection of Trust
Estate —Where testamentary trustees were authorized by
the will to do all things necessary for the proper care of the
property, and given all necessary powers to accomplish the
objects of the trust, they had authority to give a mortgage on
the trust estate to secure money advanced, with which to
make a settlement with those who had instituted a contest to
establish the invalidity of the will, where an adjudication of
invalidity would result in the beneficiaries of the trust receiv-
ing nothing.

FIELD M'LEOD for appellant.

WALLACE & HARRIS for appellee.

OPINION OF THE COURT BY JUDGE BARKER—Affirm-
ing.

Frank B. Harper died testate at his home in Wood-
ford county, Kentucky.  By his will he devised two
farms in Woodford county, aggregating some nine
hundred and seventy acres, to C. B. and F. H. Hawk-
ins, in trust for the use and benefit of F. H. Hawkins
and C. W. Hawkins until the latter arrived at the age
of twenty-one years, at which time the cestuis que
trustent were each to take designated portions for

life with remainder to their children, if any. If either died childless, the survivor should take the lands for life—remainder to his children, if any; if none, then to such persons as by will the survivor might appoint. C. W. Hawkins is an infant, and his father, C. B. Hawkins, his statutory guardian.

After the will was duly probated in the county court, the heirs at law of the decedent, Frank B, Harper, instituted a contest to establish its invalidity, and carried the matter on appeal to the Woodford circuit Court, where it was pending when the proceedings hereafter to be recounted took place. .

The testator was a bachelor. The contestants are his sisters and his nephews and nieces. If they succeeded in having the will adjudged invalid, the trust established by the testament for the benefit of F. H. Hawkins and C. W. Hawkins would certainly be dissipated, and the beneficiaries receive little—if anything—from the estate, so large a part of which was devised to them. When the case was approaching the day of trial, the danger of the situation became apparent to the trustees and the beneficiaries, and thereupon a compromise was agreed upon by which certain notes of the contestants held by the estate, and which are said to be worthless, were surrendered to the makers, and in addition thereto the trustees agreed to pay over to the contestants the sum of thirty-five thousand dollars, to be distributed among them pro rata according to their respective rights. The trust estate consists in the main of the land heretofore mentioned, and includes no money with which to pay the thirty-five thousand dollars agreed upon as a settlement of the contest of the will.

The appellee, the Fidelity Trust Company, of Louisville, Kentucky, agreed with the trustees to loan

the trust estate the sum of thirty-five thousand dollars, provided the loan could be lawfully secured by a first mortgage lien upon the land embraced in the trust estate. The right of the trustees to borrow the money in question could not be definitely determined without the adjudication of a court having jurisdiction of the subject matter and the parties. Thereupon this procedure was instituted in the Woodford Circuit Court in order to obtain the advice and consent of the chancellor to borrow the money necessary to secure the permanent integrity of the trust estate. All of the parties in interest were properly before the court, and a judgment was entered holding that the trustees were lawfully empowered to borrow the money in question, and authorizing them so to do. From that order this appeal is prosecuted.

There is, and can be, no question as to the bona fides of this litigation, or of the necessity that the trustees should be authorized to borrow the sum in question in order that the integrity of the trust may be assured. The relation of the trustees to the cestuis que trustent, and their deep interest in the maintenance and preservation of the trust estate, are a sufficient guaranty that their action in the premises was warranted by great danger of an adverse verdict in the contest as to the validity of the will. The following is an excerpt from the will prescribing the authority of the trustees:

"And (they) shall do and perform all things and acts necessary and expedient for the proper care and maintenance of said property, controlling and managing the same for the best interest of said cestui que trusts in every respect as any prudent and reasonable man would control and maintain his own

property in a similar kind of business; and to fully
accomplish the objects and purposes of the trust
herein created said trustees shall have and are hereby
given and granted all necessary and incidental powers
and authority.''

It seems to us that this language fully authorized
the trustees to meet and obviate the danger with
which the trust estate was confronted by the contest
as to the validity of the will.  It is undoubtedly a
cardinal rule for the government of trustees, that
they should preserve the trust, committed to their
care, from destruction.  It is inconceivable that the
creator of a trust should desire to withhold from its
trustees the power to preserve the estate which he has
created.  The trust estate herein is worth, in round
numbers, one hundred and twenty thousand dollars.
If the contest proved successful the beneficiaries re-
ceived nothing.  The practical question confronting
the trustees was, whether it was safer and, therefore
more beneficial to the cestuis que trustent, that they
should certainly receive eighty-five thousand dollars
worth of property, and pay the thirty-five thousand
dollars to the contestants, or assume the risk of re-
ceiving nothing by an adverse verdict as to the validi-
ty of the will under which they claimed.  The wisdom
of the proposed compromise necessarily depended
upon the danger involved in the contest as to the will.
This danger the parties, themselves, and their attor-
neys were in a position to properly weigh and appre-
ciate.  The learned chancellor, who approved the
compromise, has his home in Woodford county, and
doubtless is well acquainted with all the parties here-
to.  His opinion as to the merits of the settlement
made, has, and is entitled to, great weight in the prob-
lem before us.

In the case of United States Trust Company v. Roche, 22 N. E. Rep., 265, a trust estate had been allowed by the trustee to become encumbered by liens for unpaid taxes and water rents for about fifteen thousand dollars, and the property was in danger of being lost by an enforcement of these liens. Thereupon the trustee borrowed the necessary money to pay off the liens from the United States Trust Company, and executed and delivered to it a mortgage to secure the debt thus created. Upon failure to pay this last indebtedness the Trust Company instituted an action to enforce its mortgage lien. This was resisted on the ground that the borrowing of the money and the execution of the mortgage were illegal and void as being a contravention of the following statutory provision: "Where the trust shall be expressed in the instrument creating the estate, every sale, conveyance, or other act of the trustees, in contravention of the trust, shall be absolutely void." To this contention the Court of Appeals of New York said: "Were the loan and mortgage in contravention of the trust? Assuming that the failure of the trustee to pay the taxes assessed upon the subject of the trust out of its income was a devastavit, his wrong has no legal connection with the primary question involved in this case, and above stated. The plaintiff in no way contributed to the wrong committed by the trustee, which had been fully accomplished before the loan was applied for. The money was not borrowed and applied in payment of a debt illegally contracted by the trustee; but was borrowed and actually applied to pay a debt owing to the State, which, by virtue of the power of taxation, was a lien upon the subject of the trust, prior and superior to all of the rights arising out of it. The loan in no wise

increased (except by the sum incurred in obtaining it) the burden upon the estate, but prevented its total loss, which, but for this, or a like loan, would have been the inevitable consequence of the non-payment of the taxes. Had this trustee been removed because of his devastavit, and a new one substituted while the sale for taxes was impending, the new trustee would not have been without power, having the consent of the court, to have borrowed money upon the credit of the estate for the purpose of saving it from being wholly lost. A mortgage given by a trustee so situated, and for such a purpose, would not have been in contravention, but in aid, of the trust. There is no difference in principle between the case supposed and the one in hand. Neither borrowing the money for this purpose nor securing its repayment by mortgage was an act in contravention of the trust. The act being lawful, the expenses incidental to doing it (the items are not questioned) were a charge upon the estate, and the sum of the expenses was properly included in the mortgage.''

In the case of Smith v. Nones, 28 Ky. Law Rep., 248, we held that the trustee of an estate was authorized to dedicate a part of it in laying out roads, streets and boulevards, and in conveying a part of it to an agent who performed valuable services to the estate, and thereby greatly enhanced its value as a whole, although the number of acres was diminished.

The rule as to trustees' power with reference to the preservation of trust property is thus laid down in the Am. and Eng. Encyc. of Law, 1st Ed., vol. 17, p. 136:

''The trustees' powers are such as are ordinarily incident to the proper execution of the trust and the care of property. He is not limited to those expressly

conferred; any acts done in good faith for the manifest good of the trust will be sustained; thus, he may compromise claims by or against the trust estate, or submit a controversy to arbitration; and may, in certain cases, borrow money for the use of the estate, and execute a mortgage on the property."

In so far as the interest of the infant cestui que trust is concerned, his statutory guardian, who is also his trustee under the will, is authorized by section 2030, of the Kentucky Statutes to make the compromise under consideration. The statute is as follows:

"A guardian shall discharge the liabilities of the ward for the debts of the ancestor out of his personal estate, and when the personal estate, with the rents of the real estate is not sufficient therefor, he may, by petition to a court of his county having equity jurisdiction, obtain leave to sell land for that purpose. He shall also receive and sue for the debts and demands owing to the ward, defend actions against him, and, with leave of the court, may compound a debt or demand, or settle or compromise any controversy concerning the lands of his ward when the interest of the ward will be subserved thereby."

Limitations on the powers of trustees are for the benefit of the cestui que trust and the preservation of the estate. These can have no place where their enforcement tends not to preserve, but to destroy the estate. To deny to the trustees the power they seek to exercise in the case at bar, would be to make the letter of the law kill the spirit. We, therefore, feel authorized, both upon reason and authority to affirm the judgment of the chancellor, and it is so ordered.