# Elgin White Sharp's Guardian Ad Litem, et al. v. G. Elgin Sharp's Executrix, et al.

(Decided December 14, 1926.)

## Appeal from Bath Circuit Court.

1. Trusts—Trustee Under Will, Authorized to Sell Property, Held Auhorized 'to Mortgage it for Loan to Pay Estate Debts.—Trustee for minor children under will, having power to sell real estate, held authorized to mortgage it to obtain loan for payment of estate's debts, where sale of sufficient portion of estate to pay debts at prevailing prices would practically consume it.

2. Executors and Administrators—Real Estate Held Chargeable With Debts of Decedent in Excess of His Personalty.—Real estate held chargeable with decedent's debts, in so far as they exceed value of his personalty.

G. C. EWING for appellants.

W. B. WHITE for appellees.

OPINION OF THE COURT BY COMMISSIONER SANDIDGE—Affirming.

G. Elgin Sharp, a resident of Bath county, Kentucky, died testate on June 13, 1925. He was survived by his widow, Emily White Sharp, and two infant children, Elgin White Sharp and Waller Sharp. By his will he directed that all of his debts and the expenses of his funeral and burial be paid out of his estate. He then devised one-third of his estate to his wife for life, expressly empowering her to sell and convey and to resell and reconvey whenever and as often as her discretion might dictate all or any portion thereof. He also provided that the purchaser should not be required to look to the application of the proceeds of such sales; and also that, if the income from that portion of his estate should be insufficient to comfortably maintain his wife, she might expend a sufficient portion of the *corpus* for that purpose. He further provided that the one-third of his estate so devised to his wife at her death should go in equal proportions to their two sons, Elgin White Sharp and Waller Sharp, in fee simple. The remaining two-thirds of his estate he devised to his wife as trustee in trust for their two sons, one-third each, to be held by her in trust until they became twenty-one years of age. As

· such trustee she was expressly given power to sell, transfer and convey any portion of the trust estate and to resell and reconvey and reinvest in the manner that and as often as her judgment might dictate, title of all property upon reinvestment to be taken and held under the terms of the trust. From the income from the trust estate she was authorized and directed to maintain and educate their two children, and it was expressly provided that if the income should be insufficient for those purposes a sufficient portion of the *corpus* might be used. It was further provided that purchasers of any of the trust property should not be required to look to the application of the funds. The will provided further that the wife should have authority without the intervention of any court to partition the estate into the three divisions or shares provided for. As each of the two children should become twenty-one years of age it was provided that his portion of the estate should pass to him in fee-simple title.

It appears that when testator died he owned 1,050 acres of farming lands in the vicinity of Sharpsburg, Bath county, Kentucky, a brick residence in which they had resided, an undivided one-half interest in another small residence, and an undivided one-half interest in a vacant lot, all located in that town. His personal estate, consisting of stocks, bonds, notes, mortgages, tangible personal property, and proceeds of life insurance policies, amounted to approximately $45,000.00. He owed at the time he died approximately $100,000.00. It appears herein that the debts owing by him when he died, the cost of his funeral and burial and the cost of administration exceeded the amount of his personal estate by approximately $60,000.00. The real estate owned by him when he died is chargeable with the payment.

Appellee, as executrix of his will and as trustee of the estate of their infant children, instituted this action pleading the foregoing facts, and further that due to the depreciated condition of the market for farm lands in the vicinity where testator's large body of farming lands is situated the present sale of a sufficient amount of the real estate to settle testator's debts would consume the greater portion if not all of it. She pleaded also that she could borrow from a banking institution $60,000.00 at 6% per annum, to be repaid in 10 years, with the privilege of repaying any portion or all of it sooner if pos-

sible, if it be adjudged that under the terms of the will creating the trust and the facts appearing she has authority to borrow the money and to execute a mortgage on the trust estate to secure its payment. The two children, the beneficiaries of the trust, were made parties defendant, and she sought the advice of the chancellor and to have it adjudged that she has authority to borrow the money and execute the mortgage. The guardian *ad litem* filed a general demurrer to the petition and an answer which discloses that his investigation of the facts pleaded makes it appear that the allegations of the petition as to the assets and liabilities of testator's estate and the prevailing condition of the real estate market and the fact that enforced sales now to settle testator's debts would consume most if not all of the estate are true. The chancellor adjudged that the trustee has authority under the terms of the will and the circumstances obtaining to borrow $60,000.00 and to mortgage the trust estate to secure its payment. The appeal has been prosecuted from that judgment.

We find that very similar situations have heretofore been presented to this court. In Fidelity Trust Company v. Hawkins, etc., 139 Ky. 803, it appears that Frank B. Harper, a bachelor, died testate and by will devised a large tract of land in trust for the use and benefit of two designated beneficiaries. After the probate of the will a contest was instituted by certain of the heirs who were disinherited by the will attacking its validity by an appeal from the judgment probating it to the circuit court. The trustees were thereby confronted with this situation: If the contestants should be successful the trust estate or the greater portion of it would be lost. It was ascertained that by the payment of $35,000.00 to those contesting the validity of the will which created the trust the contest could be compromised and settled and the remainder of the estate saved for the *cestuis que trustent*. The trust estate consisted solely of farm lands, and the trustees had no available funds with which to pay the $35,000.00. They thereupon instituted an action asking advice of the chancellor and that it be adjudged that they under those circumstances had authority to borrow the money and mortgage the trust estate to secure its payment. The chancellor so adjudged, and on appeal to this court the judgment was affirmed. The opinion discloses the reasons actuating the court.

In Lyddane, et al. v. Lyddane, et al., 144 Ky. 159, facts and circumstances exactly similar to those presented herein obtained, though the amount of the indebtedness and the amount of the estate were not so large as appear herein. There as here the will of testator devised his property to his widow in trust for the benefit of herself and children until the youngest child attained the age of twenty-one years. Testator's debts exceeded the amount of his personal estate by approximately $9,500.00. The trustee thereupon instituted an action asking the advice of the chancellor and seeking authority as trustee to borrow sufficient money to settle the indebtedness and mortgage the estate to secure its repayment.' The chancellor granted the relief sought, and upon the appeal the judgment was affirmed. Among other things in the opinion it was said:

"The indebtedness is a part of that which was owing by the decedent at the time of his death. More than $5,000.00 of it represents the balance of the purchase money due upon the farm, and is a lien upon it. The entire estate is subject to the payment of these debts. It is shown that the executrix and her children have so managed the farm since the death of her husband as to materially reduce the indebtedness against the estate, and they allege that, if the indebtedness is so arranged as to give them time, they will be enabled to pay it all without having to sell any portion of the land. The effect of granting the loan is really but to postpone the time of payment of the debts owing by the estate. It is manifest that it is to the best interest of the estate to do so. The testator directed that the settlement and distribution of his estate be postponed until his youngest child reached the age of twenty years, and it is the duty of the executrix and trustee, if possible, to so manage the estate as to comply with this provision of the will. It is manifest that it can be done only by securing an extension of the time within which to pay the debts. This is provided for by uniting them in a single obligation to be paid in the future. By this plan the indebtedness of the estate is in no wise increased, but the trustee is given an opportunity to pay same and avoid a sale of the farm."

The situation here presented is exactly the same as that which confronted the court in the last mentioned case. In addition to the allegations of the petition depositions of reputable and advised persons were taken establishing that the large tract of farm land owned by testator is fertile and productive and of greater value than could be obtained for it at a forced sale instituted by decedent's creditors; that being especially true because of the present demoralized condition of the real estate market. The debts exist and are a charge against the land. The merging of all the debts into one will not increase their amount. By postponing the date when they must be paid every opportunity will be given to protect and preserve the trust estate, whereas their immediate payment would consume it. Testator from his close association with her seems to have had full confidence in the ability of his wife to manage his large estate, else he would not have entrusted it to her management. The evidence herein also establishes that she has so managed it since his death as to demonstrate that she can support herself and children and produce a surplus after paying the annual interest on the debt. The situation is not one where we are required to look strictly to the instrument creating the trust to find authority for the contemplated indebtedness and mortgage. The debts are the debts of the testator and already exist, a charge against the property devised to the trustee. It is a case rather that addresses itself to the discretion of the court in its chancery jurisdiction to determine what is best under the circumstances for the infant beneficiaries of the trust. Further discussion of the question is deemed to be unnecessary, in view of the fact that by the two opinions, *supra,* similar situations and the reasons upon which the court founded its opinion, which will be followed here, were considered at length. The trustee properly sought the advice of the chancellor before acting in the premises.

The judgment will be affirmed.

Whole court sitting.