## Champion et al. v. Commonwealth, for Use and Benefit of Dunn.

(Decided March 22, 1929.)

CHAS. FERGUSON for appellants.

C. H. WILSON for appellee.

OPINION OF THE COURT BY JUDGE WILLIS—Reversing.

C. B. Davis was the owner of a large amount of property, and was heavily involved in debt. He was past 80 years of age and was unable to manage his property successfully. Some of the creditors were pressing for payment of the debts due them, and Davis was unable to meet their demands. He had confidence in the business ability and integrity of W. I. Champion, and conveyed to him as trustee all of his property. The trust deed was made on August 23, 1922, and provided that the trustee should have full and complete control and management of the property. This action was instituted on September 17, 1926, by the commonwealth, for the use and benefit of D. A. Dunn, against W. I. Champion, trustee, and the surety in the bond which he had given, to recover a debt of $2,400, with interest and costs, which Dunn had paid

as surety for Davis. The grounds of liability relied upon in the petition were that the trustee had breached his trust (1) in failing and refusing to pay the proceeds of the trust property pro rata among the creditors, as required by the trust deed, and in paying himself and other creditors of C. B. Davis their unsecured debts in full, to the exclusion of the debt due Dunn, (2) in lending money to himself as trustee at a usurious rate of interest, taking a mortgage therefor and including therein unsecured indebtedness due the trustee from Davis, and then paying himself the entire debt with interest at 7 per cent. per annum, (3) in charging and collecting exorbitant commissions and compensation for his services, and (4) in releasing J. B. Thompson or Willis Thompson from a contract for the purchase of real estate, whereby the estate lost $467.50. An amended petition was filed, setting up a list of the unsecured debts paid in full, but no additional grounds of liability were alleged. The circuit court granted the relief sought, and the trustee appeals.

The evidence shows that after the trustee was appointed he took charge of the estate and undertook to conserve it. There was no money on hand, and the taxes, interest on secured debts, and expenses exceeded the income. It was necessary to raise money, or wind up the trust at once. The only way to raise money was to borrow it. At least some of the creditors, if not all of them, thought that the property would bring sufficient money to pay all the debts, if adequate time could be obtained. Champion testified that he was under the impression from the start that the estate would pay out, and there was no way to prorate it except to institute a suit for settlement of the trust. Soon after he took charge of the estate there were a number of different creditors pressing their claims and threatening suits, and after consulting with his counsel he decided that it would probably be best to bring a settlement suit, thus forcing everybody to wait till collections could be made and sales concluded, but, in later consultation with the creditors, appellee Dunn, as president of the bank, which was the largest creditor of the estate, bitterly opposed that plan. Other creditors and friends of Mr. Davis and his family also opposed immediate suit, and favored a continuance of the trust. There was no income sufficient to pay the interest and the taxes, and, being unable to borrow money because payment could be promised only when a sale was

made, the trustee himself advanced $5,450 to the estate. Davis and wife joined in a mortgage to secure this loan, which was made during the first year of the trust. The trustee also borrowed from the Smithland Bank $1,877.-85, which was secured by a mortgage. Appellee was president of that bank at the time. The money was used to pay judgments, executions, past-due lien notes, and some small debts that were the source of threatened action. The Smithland Bank was paid a total of $3,703.-96. Other notes of varying amounts aggregating $2,552 were paid. The largest of these eight notes was $600, and the smallest was $150. Dunn was interested, directly or indirectly, in several of the small debts paid, and, as stated, was president of the Smithland Bank which then collected more than all the other unsecured creditors combined. All these payments were made during the first year of the trust, and were reported by the trustee in his first settlement filed in the county clerk's office, which was dated August 15, 1923. These debts were paid by the trustee, because the creditors were pushing their claims, and it was necessary to satisfy them in order to carry on the trust. No complaint was made of it until this suit was filed more than three years later. It is obvious that these payments constituted no breach of the terms and obligations of the deed of trust. That instrument expressly stated that "some creditors are about to push their debts for collection and that the funds to meet same, or the interest thereon, must be raised at once to pay same by sale of property or by mortgage of same." The course of action taken by the trustee did not result in the realization of sufficient funds to pay all the debts in full; but it enabled the trust to be carried on for three years, and saved it from sacrifice at the outset. The opportunity for a rally in real estate values was provided, and that was the object which determined the course that was followed. The trustee acted in good faith and in accordance with the best judgment of those most interested in the trust. His payment of the claims at that time out of funds borrowed was not a violation of the provision of the trust deed, to the effect that the trustee should apply the proceeds of his sales in a legal and equitable manner, first satisfying secured debts from the sale of incumbered property and then applying proceeds against which there was no lien to the satisfaction of all debts pro rata. It was thought that sales would be made from time to time, and the provision related to those sales and to the final

distribution, and not to the pressing claims referred to in an earlier part of the deed, which had to be provided for at once. It so happened that satisfactory private sales could not be made, and it was determined to employ an auctioneer and put on a public sale of all the property. This was done, and resulted in a sale of all but one piece of property, for which no one would bid the amount of the lien against it. The proceeds paid only the lien debts, and left nothing to distribute among the remaining unsecured creditors. The trustee used reasonable diligence and good faith, and did not violate the deed of trust. He was not liable to Dunn because of the payments made during the initial year of the trust. 26 R. C. L. sec. 186, p. 1323.

The note which Davis gave Champion called for interest at 7 per cent. per annum, but the proof is uncontradicted that he collected only legal interest. There was no attempt to sustain the charge that Champion had collected usury from the trust funds, or had paid himself any unsecured debts. He was entitled to be secured for money advanced to the trust. The deed of trust authorized it (Sharp's Guardian v. Sharp's Ex'x, 217 Ky. 171, 289 S. W. 250), as is expressly admitted in the pleadings. It was done in the course of conducting the trust, and was accepted and acquiesced in at the time by all the parties concerned.

The allegation, that exorbitant commissions and compensation were charged and collected by Champion, was not sustained by any evidence. The trustee was paid only the amounts stipulated in the deed of trust. 26 R. C. L. sec. 257, p. 1391. He was not chargeable with the fees of the auctioneer, the premiums awarded at the auction, or the money paid for music. These items of expense attending the auction were reasonable and necessary, and no basis was shown for charging them to the trustee. 39 Cyc. 478; 26 R. C. L. p. 1389, sec. 254.

The charge that a loss was caused by the trustee in releasing Thompson from a land contract was not proven. Thompson made a bid at the auction, but no written memorandum of the sale was made at the time, and the trustee was advised by counsel that performance of the bid could not be coerced. In that situation a compromise was effected, and there is nothing to indicate that the trustee failed to get all for the estate that it was possible to

realize on that land. The trustee was not an insurer, but was required only to exercise reasonable diligence and good faith to accomplish the purposes of the trust. 26 R. C. L., sec. 186, p. 1323; Bogard v. Planters' B. & T. Co. (Ky.) 112 S. W. 872; Wilson v. Smoot, 186 Ky. 194, 216 S. W. 129.

It is said in a brief for appellee that appellant paid debts without proper proof, as required by the deed of trust. But the petition made no such complaint, and it does not appear that any overpayment was in fact made.

The appellee manifested no right of recovery, and his petition should have been dismissed. It appears, however, that the trust estate has some remaining assets, and, if anything should be realized thereon, the trustee will distribute it to appellee and any other remaining creditors according to the terms of the trust deed.

Judgment reversed, with directions to dismiss the plaintiff's petition.