## Breetz et al. v. Hill et al.

March 9, 1943.

H. G. Breetz and Jackson & Woodward for appellants.

Robert C. Simmons for appellees.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—
Affirming.

George L. Hill died in Kenton County, September 25, 1941. In his will executed in 1937, he devised and bequeathed his property of all kinds to his wife and two sons, (one of whom predeceased him) as trustees to be held by them until his youngest child, who was eighteen years of age at the time of his death, should reach the age of twenty-seven, when there was to be a distribution of his estate. The widow, with one son and a daughter, (as provided) qualified as trustees and representatives.

The question presented for determination in a pleading for Declaration of Rights (Civil Code of Practice, sec. 639a—1 et seq.) is whether under the terms of the will the trustees have authority to mortgage the real property to meet an indebtedness of testator and the estate. After first providing for payment of "my debts and funeral expenses," and making suggestions as to trusteeship, he wrote:

"(1) Said trustees will hold, manage and control said estate with all the power and authority which I would have if living, and will pay over the net income thereof to my said wife, Emma P. Hill, during her natural life. Said trustees are given full power and authority to change real estate into personal estate, or personal estate into real estate, with like power over any and all reinvestment. Said trustees are hereby given full power and authority to execute such deeds or other instruments in writing as may be necessary or in their judgment expedient to carry out the power and authority vested in them.

"(3) All of the power and authority vested by this will in said trustees or said executors may be exercised by them without the aid of intervention of any court."

Mr. Hill, prior to and at the time of his death, with

the son, Tom, conducted a grocery business which he had inherited from his father. It was the chief source of the modest fortune testator had accumulated. The business since testator's death had been profitably conducted by the executors at the request of the trustees, providing a substantial income. For certain tax purposes testator's interest in the business was appraised at $60,984.41, and other personal estate, at approximately $13,000, of which $470.81 was cash; 315 shares of stock in the Ernst Realty Company, valued at $7,875, and a note apparently of doubtful value. The real estate consisted of the family residence, valued at $25,000, one-half interest in several unimproved lots near the town of Erlanger, valued at $13,908; the Covington business property in a part of which the grocery is conducted, all valued at $135,000. There is no income at present from the personal estate other than the grocery business, and slight returns from the Realty Company stock.

At his death testator was indebted to appellant bank in the sum of $61,000, evidenced by unsecured demand notes. The taxes on real estate, state and federal income taxes, aggregating in all about $11,000 have been paid, as have costs of administration and funeral expenses. Attorneys and representatives allowances, with an estimated federal estate tax of more than $25,000, and a pending deficiency estate tax assessment of more than $7,000 remain unpaid. The two tax items approximate $33,000, with little personal property, other than the grocery business, to meet the debts, which added to the bank's indebtedness approximate $90,000.

It is pointed out in pleading, substantiated by proof, that it is impossible to meet the tax and bank obligations without recourse to one of two methods; to mortgage the real estate, or sell it or the going business, either of the latter, as shown by the proof, resulting in a sacrifice of the estate, due to prevailing conditions. There is no demand for unimproved real estate, little or none for residential property of the character of residence owned by testator. It goes almost without saying that no one would at this time purchase a grocery business, except at sacrificial figures.

The bank has agreed to extend time of payments of the notes, and advance the amount of the federal estate tax (a debt primarily against the estate). Detroit Bank v. United States, 63 S. Ct. 297, 87 L. Ed. —, provided the

court construe the will as to permit the pledging of the real estate. The plan is to take notes secured by mortgage, at three per cent, amortized over a period of fifteen years.

It is asserted, and the proof bears out the assertion, that payment may be made, certainly if the business continues "under no worse than prevailing conditions" in a period of ten years. (It appears from proof that since testator's death the bank's debt has been reduced by $5500, leaving it approximately $55,000). The trustees, and all interested parties, and others testifying, agree that the proposal is the most feasible, because the sale of real estate, and particularly the grocery business at the present time, would be disastrous, since the business is the main source of income to the estate.

All parties were properly before the court. The boy who is in the armed service entered appearance, and approved the proposed plan. The guardian ad litem thought it expedient and feasible, but, as did the bank, expressed doubt as to authority. The chancellor held that the will, impliedly at least, authorized the execution of the mortgage to the extent of $89,000. Appeal is by the bank and the guardian ad litem.

In his opinion, made a part of the record, it was manifested that he found, as we do, no difficulty in concluding the proposed plan to be much to the benefit of the estate. He found from proof that the sale of real estate at this time would result in a sacrifice, and that it would be deplorable to "kill the goose" which was producing "the golden eggs." He found the estimated net income from the business to be about $8000 with rentals from the business property to be something like $15,000 annually.

So, it may be seen that by application of good business methods, the beneficiaries may be provided for, with enough to liquidate within reasonable time, the estate's proposed obligation to the bank. The chancellor placed emphasis on that portion of the will, which after providing, but before setting up the trust in point of sequence, said that the trustees should hold, manage and control the estate, "with all the power and authority I would have if living." From a survey of the entire will, which is prerequisite when it becomes necessary to construe any portion or portions, (Watkins v. Bennett, 170 Ky.

464, 465, 186 S. W. 182; Shedd's Admr. v. Gayle, 288 Ky. 466, 156 S. W. 490), the chancellor correctly concluded that it was the clearly expressed intent of testator to have his estate kept intact until death of his wife, and until the youngest child should reach the age of twenty-seven.

The doubts expressed by appellants, guardian ad litem, and the bank, the former admitting expediency of the plan, are based on general rules of construction of wills as to power and duty, pointing to the general rule as manifested in our opinions to the effect that the power given to trustees to sell does not authorize a mortgage, admitting exceptions to the rule; secondly, that it is the duty of representatives to exhaust the personal property before encumbering real estate.

On the first proposition there are cited Pennabaker Home for Girls v. Directors, 250 Ky. 44, 61 S. W. (2d) 883; Chenault's Guardian v. Metropolitan Ins. Co., 245 Ky. 482, 53 S. W. (2d) 720; Welch v. Mann's Ex'r, 261 Ky. 470, 88 S. W. (2d) 1, 3, and others, all of which show, however, that it is not a hidebound rule, by stating exceptions to be that where there is power of sale, and the purpose may be accomplished as effectively by execution of a mortgage, that the power to execute depends upon the intent of the testator gathered from the language of the entire will, and the object intended to be reached in creating the power, limiting the power, (Mann case, supra) "unless there is something in the instrument granting it disclosing that a mortgage was within the intention of the donor of the power." While we there held no power to mortgage, the case is readily distinguishable from the case at bar. See also Gaither v. Gaither, 288 Ky. 145, 155 S. W. 746; Morgan v. Meachan, 279 Ky. 526, 130 S. W. 992.

The only authority relied upon as to the requirement to exhaust personal property before encroaching upon real estate is Jones et al. v. Keene, 289 Ky. 779, 160 S. W. (2d) 164. The general rule is correctly stated, but it, like others, stated the exception as did Sharp's Guardian v. Sharp's Ex'x, 217 Ky. 171, 289 S. W. 250.

Here there is a lack of sufficient personalty, excluding the going grocery business, to meet any appreciable payment of the debt of testator, and the estate tax debt. While appellants cite Lyddane et al. v. Lyddane, 144

Ky. 159, 137 S. W. 838, the Sharp case, supra, and Fidelity Trust Co. v. Hawkins, 139 Ky. 803, 90 S. W. 249, in support of the primary contention, we held that under authority to sell there was an implied power to mortgage for debt paying purposes. The Lyddane case is peculiarly applicable, as we find Vittitow v. Keene et al., 265 Ky. 66, 95 S. W. (2d) 1083.

Courts of equity have extensive power in seeing that trust estates are preserved to the advantage of beneficiaries. Hegan v. Netherland, 141 Ky. 686, 133 S. W. 546; Vickers v. Vickers, 189 Ky. 323, 225 S. W. 44. Here the representatives were given the power to change real estate into personalty; to execute deeds or other instruments to enable them, as they deemed necessary or expedient, in their judgment, to exercise the dominant power and authority vested in them by the will to preserve the estate, the business, if it could be done, until the estate was to be distributed as per terms of the will. That this power was thought by testator to be broad, is evidenced by the last paragraph of his will which gave them the right of exercise without the intervention of any court, though they have wisely sought advice. We think the chancellor's judgment correctly authorized the execution of the mortgage for the purposes and to the extent stated, hence it is affirmed.