Case 77.—ACTION BY JACKSON DESKINS AGAINST THE VIR-
GINIA MINING AND IMPROVEMENT CO. AND ANOTHER
FOR THE UNPAID PURCHASE MONEY ON LAND, AND
TO RECOVER THE MINERAL RIGHTS THEREIN, IN
WHICH TOM DESKINS AND THE BIG SANDY CO. INTER-
VENE.—December 8.

## Deskins, &c. v. Big Sandy Co.

121  601
f137·  94

Appeal from Pike Circuit Court.

A. J. KIRK Circuit Judge.

Judgment for Big Sandy Co. Tom Deskins ap-
peals. Affirmed.

1. Purchaser at Judicial Sale—If a purchaser at a judicial sale
   acted on his own account, another in purchasing from the
   debtor pendente lite, acquired no rights as against him.
2. Vendor and vendee—A purchaser of one who has no title
   at all, becomes the owner of any subsequently acquired title
   of the vendor.
3. Title—The doctrine of bona fide purchase without notice ap-
   plies in favor of the purchaser only of a legal title, and a
   purchaser at a judicial sale, not having received any con-
   veyance of the land he bought, at best held only the equitable
   title.

J. M. ROBERSON for appellants.

While the legal title to the land in controversy at the time
of the conveyance to Wm. Deskins, was in James Hatcher, yet he
was the real owner thereof, and no valid title could pass to any
one without his consent, and any private arrangement between
him and Jackson Deskins giving the latter the right to redeem
the land, can not affect the title of an innocent purchaser for
value from both of them, especially so, when Hatcher was not
a party to the action at the time of the conveyance to Wm.
Deskins.

J. F. BUTLER for appellee.

1. We affirm that appellant has shown no right of recovery, and that the court erred in permitting appellant to file a petition to be made a party, because the record shows conclusively that the sale of the mineral was made by the father of appellant nine years before appellant claims to have purchased the land, and that he had full knowledge of all the transactions between his father and the Virginia Mining and Improvement Co.

2. The court having jurisdiction of the subject-matter and the parties is conclusive, not only as to all matters determined by it, but as to all incidental matters which might have been properly litigated and decided in the same suit, and is binding on all the parties to the action until it has been reversed, vacated or modified in some of the modes known to the law.

#### AUTHORITIES CITED.

Civil Code, sec. 358; 84 Ky., 202; Sears v. Sears, 95 Ky., 173; Malone v. Schwing, 101 Ky., 56; Black on Judgments, vol. 1, p. 34.

OPINION BY JUDGE BARKER—Affirming.

In 1882 Jackson Deskins was the owner of a tract of land in Pike county, Ky., containing 820 acres, upon which he resided. On the 5th day of August, of that year, he executed and delivered to Harper Phillips a mortgage on the land to secure the sum of $500. Deskins having failed to pay in accordance with the tenor of his obligation, on the 27th day of March, 1886, Phillips brought a suit in equity in the Pike Circuit Court to enforce his mortgage lien. In 1890 a judgment was rendered enforcing the mortgage lien, and a judicial sale of the property was had, at which it was purchased by James Hatcher for the sum of $775, being the original debt, with interest and cost of suit added. Before sale the land was appraised at $3,000. Although the sale to James Hatcher was confirmed by order of court, no deed was delivered to him until 1903. While the foreclosure suit of Phillips v. Deskins was pending, Jackson Deskins,

on the 8th day of December, 1887, sold to the Virginia
Mining & Improvement Company all of the coal and
mineral rights underlying his tract of land for the
sum of 50 cents per acre, one-half of which was paid
cash, and a lien reserved for the balance until the
question of an outstanding title to one-half of the
mineral rights, not necessary to be here set forth, was
settled.   The deed to the mining and improvement
company was at once recorded.   On the 29th day of
January, 1894, this action was instituted by Jackson
Deskins against the Virginia Mining & Improvement
Company for a judgment for the unpaid balance of
the purchase money for the mineral rights thereto-
fore sold it by him.   On November 12, 1895, the com-
pany filed its answer and cross-petition, in which it
admitted the debt, as claimed, so far as the amount
was concerned, but alleged the subsequent purchase
by James Hatcher of the land at the judicial sale
had in the case of Phillips v. Deskins, and that
Hatcher, at the time of the purchase in question, had
a verbal agreement with Jackson Deskins by which
the latter had the right to redeem the property by
the payment of the purchase money, and was, there-
fore, in reality the trustee of the latter.   Although
served with summons, Hatcher made default, and a
judgment was rendered against him, determining that
he had only a lien on the land, and the Virginia Mining
& Improvement Company had a good title as against
him for the mineral rights they had purchased, and
it thereupon paid into court the amount of money
due on its purchase, the right of which was after-
wards to be adjudicated between Jackson Deskins
and James Hatcher.

After this action was instituted (to wit, on May,
1894), Jackson Deskins and James Hatcher, by a

joint deed sold and conveyed a part of the original tract of 820 acres to William Deskins for $600 cash, all of which was paid to Jackson Deskins.    In the deed it was recited that Hatcher was the real owner and that Jackson Deskins joined in the conveyance merely to convey the naked legal title, which was still in him.   On the 23d day of July, 1895, William Deskins sold and conveyed the property so purchased by him to his brother, Tom Deskins.  This land is a part of the tract overlying the mineral rights of the Virginia Mining & Improvement Company, and is the subject in dispute in this case.   On the 4th day of February, 1903, Tom Deskins filed an intervening petition in this case, praying that it be taken as his answer, and making it a cross petition against all of the parties claiming adversely to himself, and setting up the conveyance by his father and Hatcher to his brother William, and the subsequent conveyance by William to him; alleging himself to be the owner of the land, and that the judgment of the court theretofore rendered in favor of the Virginia Mining & Improvement Company against his remote vendors was invalid as to him; and praying that his rights be protected, and his title quieted, etc.  Subsequently the Big Sandy Company, which, by regular devolution of title now owns all the mineral rights of the Virginia Mining & Improvement Company, also filed an intervening petition, denying the title of Tom Denskins as set out in his petition, and alleging title in itself to the mineral rights underlying the property purchased by William Deskins from Jackson Deskins and James Hatcher, and conveyed thereafter to his brother Tom.

The question presented for adjudication is whether Tom Deskins, remote vendee of Hatcher and Jackson

Deskins, or the Big Sandy Company, the remote ven-
dee of Jackson Deskins, has the better title to the
mineral rights underlying the land purchased by the
former. From the foregoing apparently complicated
statement of facts, we may deduce a few well settled
principles which will serve as guides to the correct
adjustment of the conflicting claims. The Big Sandy
Company takes only such rights as its vendor, the
Virginia Mining & Improvement Company, had under
the deed from Jackson Deskins to the latter company;
but it takes all of those rights, whatever they are.
The Virginia Mining & Improvement Company pur-
chased from Jackson Deskins after the institution
of Phillips' suit to enforce his mortgage lien. There-
fore it was a pendente lite purchaser, and took sub-
ject to whatever judgment was rendered in that case,
with all of the consequences flowing therefrom. If
Hatcher was an independent purchaser on his own
account at the judicial sale had, the company ac-
quired by its purchase no rights whatever as against
him; but if he was only the agent in reality of Jack-
son Deskins, and purchased for him, although this
was in secret trust, yet, as against his trustee and
against his subsequent vendees properly chargeable
with notice, the corporation was invested with all of
the rights of its vendor, Jackson Deskins. A vendee
of a vendor who has no title at all becomes the owner
of any subsequently acquired title of the vendor.

But while these well settled principles are admitted,
it is said that William Deskins and his vendee, Tom
are bona fide purchasers for value from Hatcher
without notice of the secret trust (the existence of
which is admitted) between him and Jackson Des-
kins. Admitting, for the present, the soundness of
this statement of the legal principle, we will examine

the facts upon which it is predicated. Although the judicial sale in Phillips v. Deskins was had in 1890, and confirmed to Hatcher in the same year, 1894 (the date of the conveyance to William), Jackson Deskins was still in possession, exercising all of the rights of ownership. William Deskins, a son, with this condition of affairs staring him in the face, undertook to purchase a part of the tract sold at judicial sale from (as is now said) the owner of the beneficial equity, Hatcher, but required the holder of the legal title, Jackson Deskins, to join in the conveyance to perfect the title, paying all of the purchase money— $600—not to the real owner, Hatcher, but to the holder of the naked legal title, Jackson Deskins; a procedure exactly opposite to what would have taken place if this had been a bona fide transaction, but one eminently proper (from their point of view) if Jackson Deskins were the real owner and James Hatcher the secret trustee. That Hatcher had no beneficial interest in the land is shown by the fact that, when served with summons, he allowed judgment to go by default, and, so far as appears to the contrary, has never made, and is not now making, any claim under his purchase at the judicial sale. It is no answer to this proposition to say that he, having sold out to William Deskins, had no interest to defend in this action. His purchase at the judicial sale was far more extensive than what he sold to William Deskins. Indeed, what was conveyed to the latter is but a small part of what was purchased at the judicial sale. Moreover, William Deskins was himself a pendente lite purchaser. Before his purchase, his father had instituted this suit to enforce his vendor's lien against the Virginia Mining & Improvement Company and to quiet his title against certain adverse claimants, Northup and Carlisle.

His petition alleges himself to be the owner of the land in question, and seeks, as said before, relief which only an owner in possession is entitled to demand.   William Deskins was bound to take notice of this suit, and the petition describes by metes and bounds the very land, a part of which he is claiming, and alleged Jackson Deskins to be its owner and posserror.   In addition to this, it is alleged in the pleadings of his adversary, and not denied, that he actually knew of the pendency of this suit at the time of his purchase.   Being thus a pendente lite purchaser himself, he was bound to take notice of what his vendor, Jackson Deskins, claimed in his pleadings, and his purchase was subject to the judgment to be thereafter rendered.

When we take these admitted facts into consideration, with their legal deductions, and remember that William and Tom Deskins are the sons of Jackson Deskins, and that it is admitted they lived near him, the conclusion is irresistible that they knew all about the agreement between Hatcher and their father, and took subject to the rights of the Virginia Mining & Improvement Company.  So that, even if Hatcher had held the legal title, instead of only an apparent equity, the conclusion of the chancellor would have been incontrovertable.   But James Hatcher, at best, held only an equitable title to the property by his purchase at the judicial sale, not having received a deed therefor; and the doctrine of bona fide purchase without notice applies only in favor of the purchaser of a legal title.  It does not apply in favor of a bare equity.  In 2 Pomeroy's Equity, sec. 785, it is said: "From these decisions it necessarily follows that while a defendant, who really acquired only an equitable estate, which, however, purported to be a legal

estate, and which he in good faith believed to be such, may be a bona fide purchaser within the meaning of such doctrine, a defendant who knowingly and intentionally purchases an equitable estate or interest can not avail himself of the defense." In support of this proposition, the following Kentucky cases are cited in the note: Nantz v. McPherson, 7 T. B. Mon., 597, 18 Am. Dec., 216; Hunter v. Simrall, 5 Litt., 62; Blight's Heirs v. Banks, 6 T. B. Mon., 198, 17 Am. Dec., 136; Halstead v. Bank of Kentucky, 4 J. J. Marsh., 554.

To hold otherwise is to say that a man may acquire title as a bona fide purchaser without notice from the holder of a bare equity, when the fact that the vendor has only a bare equity is notice to him that secret trusts may be outstanding. No authority can be found for applying the doctrine of bona fide purchaser without notice to such a state of case. In this case, in so far as Tom or William Deskins claims the superior rights which Hatcher apparently had, he can claim these rights only as the vendee of Hatcher. The case would be the same if Jackson Deskins had executed one deed, and Hatcher had conveyed by a separate instrument. In so far as William Deskins holds the land as the grantee of Jackson Deskins, he takes it subject to the rights of the coal company, who holds under a prior recorded conveyance from him; and in so far as he takes the land as the grantee of James Hatcher, he takes only such rights as Hatcher had, and any defense that might have been made against Hatcher may be made against him. As no part of the consideration which William Deskins paid went to Hatcher, the former took nothing from the latter which he can enforce against the coal company. The land has been redeemed from Hatcher,

as must be presumed from the long continued posses-
sion by Jackson Deskins.  If this suit were between
Hatcher and the coal company, he would have no
standing in court.  William Deskins can stand in no
better right than he, except upon the ground that he
was a bona fide purchaser from Hatcher without no-
tice of the secret agreement between Hatcher and his
father; but the fact that Hatcher had only an equity
gave him notice of all secret trusts binding the land
in Hatcher's hands.  So Tom Deskins had notice, too,
of the same facts from the deed to William Deskins,
for the vendee must take notice of all facts shown by
deed to his vendor.

In addition to this, the answer of Tom Deskins,
upon which his claim is based, does not contain the
necessary allegations to sustain a judgment.  In 2
Pomeroy's Equity, sec. 785, it is said: "The allega-
tions of the plea, or of the answer, so far as it relates
to this defense, must include all those particulars
which, as has been shown, are necessary to constitute
a bona fide purchase.  It should state the considera-
tion, which must appear from the averment to be
'valuable' within the meaning of the rules upon that
subject, and should show that it has actually been
paid, and not merely secured.  It should also deny
notice in the fullest and clearest manner, and this de-
nial is necessary, whether notice is charged in the
complaint or not.  The denial must correspond with
the settled rules upon the subject of notice, so as to
bring the case within the operation of those rules.
Concerning the foregoing averments there has been,
and can be, no doubt." (23 Am. & Eng. Ency. of Law,
pp. 522, 523.)  A stream rises no higher than its
source.  Ordinarily a vendee gets no more than his

vendor has.    But an exception is made in favor of a bona fide purchaser without notice.    He is not bound by secret trusts existing against his vendor.    To entitle him to this advantage, however, he must plead the facts showing that he is a bona fide purchaser without notice.    This Tom Deskins failed to do.    He does not allege that he paid anything for the land. He does not allege that either he or William was ignorant of the real condition of the title.

For the foregoing reasons, the judgment is affirmed.