## Watts, et al. v. Noble, et al.

(Decided June 10, 1924.)

### Appeal from Breathitt Circuit Court.

1.  Judgment—Court May Not Set Aside Year After Rendered.—Court is without authority to set aside a final judgment a year after it was rendered.

2.  Judgment—Judgment Setting Aside Earlier Judgment Final, and Not Interlocutory.—A judgment in a proceeding under Civil Code of Practice, section 518, setting aside an earlier judgment, canceling deeds made thereunder, and adjudicating title to land, was a final judgment, which could not be set aside after the expiration of the term, though there remained for adjustment question of profits and rents and improvements.

3.  Judgment—Final Judgment Need Not Settle all Rights.—It is not essential that a judgment to be final should settle all rights existing between parties, and it is none the less final because other orders are necessary to carry it into effect.

4.  Appeal and Error—Cross-Appeal Not Taken in Time Dismissed.— Cross-appeal will be dismissed where taken after time for taking appeal had expired.

5.  Lis Pendens—As to Innocent Purchasers Pendente Lite, Notice Must be Filed.—At common law, a purchaser pendente lite took subject to a judgment rendered in action and was bound thereby, but under Ky. Stats., section 2358a-1, this rule does not apply to a subsequent purchaser for value and without notice, unless notice is filed in county clerk's office.

6. Lis Pendens—Purchaser for Value Pendente Lite Must Allege and Prove Innocent Purchase Without Notice.—To exempt purchaser of land from common law rule that purchaser takes subject to judgment, he must plead, and if denied show, that he is a subsequent purchaser for value and without notice, as provided in Ky. Stats., section 2358a-1.

7. Pleading—Allegation that One is Innocent Purchaser Mere Conclusion.—An averment that one is an innocent purchaser pendente lite is a mere statement of a conclusion of law.

8. Lis Pendens—To be Innocent Purchaser, One Must have Paid Consideration Before Notice of Infirmity in Title.—To be an innocent purchaser pendente lite, vendee must not only have bought without notice, but he must have paid consideration before he had notice of infirmity in title.

GRANNIS BACH for appellants.

W. L. KASH, A. H. PATTON, O. H. POLLARD, O'REAR, FOWLER & WALLACE and J. WOODFORD HOWARD for appellees.

OPINION OF THE COURT BY COMMISSIONER HOBSON—
Reversing.

Samuel White died intestate a resident of Breathitt county in the year 1905, leaving surviving him eight children by his first wife and some grandchildren, the children of a deceased daughter. He also left surviving him Armena White, who was recognized as his second wife, and a son, Alex White, who was recognized by him, though there is some question made as to the legality of the second marriage. On September 15, 1905, suit was filed by Armena J. White and Alex White, the latter being an infant about four years old, against the children of the first marriage, in which it was alleged that Samuel White owned at his death a tract of land in Breathitt county upon which he resided; that the defendants refused, by violence, to allow the plaintiffs to live on the land or to occupy it and were setting up some kind of fictitious claim to it. They prayed that the defendants be compelled to relinquish all claim to the land and that the land be sold and the proceeds reinvested in other lands on which the plaintiffs could reside. A summons was issued on the petition which was returned executed on all the defendants except Sylvania Henson, one of the granddaughters. S. F. White, one of the sons, filed an answer disclaiming any interest in the land.

On October 12, 1905, an order was entered designating Daniel White to plead and defend for all the defendants therein on the ground that the defendants were nu-

merous and all had the same defense. Daniel White, who was the administrator of Samuel White, filed an answer in which he charged that all the other children had received advancements from his father equal in value to their part of the whole estate; that he and Alex White, the infant, had received nothing, and he prayed that the land be sold and the proceeds divided between him and Alex White, subject to Armena White's dower. On March 4, 1907, without any proof being taken in the case and without any bond being executed to the infant, a judgment was entered adjudging Alex White the owner of one-half of the land, subject to the dower of Armena White, and Daniel White to be the owner of the other half interest. A sale was ordered of Alex White's half interest of the land. The sale was made by the commissioner and reported to the court. On May 3, 1907, the defendants filed exceptions to the sale; the exceptions were overruled on October 31, 1907, and a deed was made to the purchaser, George W. Noble, for the half interest of Alex White, for which Noble paid $330.00. After this D. A. White sold his half interest in the land to Noble, subject to the widow's dower, and some of the other children also conveyed to Noble their interest.

On February 5, 1914, the children of the first marriage and the children of the deceased daughter brought this suit against George Noble, D. F. Deaton, George Bush and S. F. White. Deaton and George Bush had entered under Noble and were cutting the timber. The plaintiffs alleged that they were the owners of the land; that the defendants were holding it without right and cutting the timber, and by an amended petition they set up the proceedings in the former suit, alleging that D. A. White was the administrator of their father; that he had told them that he would make the defense to the suit for them and so had procured them to make no defense in that action; that the judgment had been obtained by fraudulent collusion between Armena White and D. A. White; that Armena White was not the wife of Samuel White and was entitled to no dower in the land and that the property descended to all the children and that they had discovered the judgment rendered in the former action only a few months before the petition was filed. They prayed that the judgment be set aside and that they be adjudged the owner of the land. Answers were filed controverting the allegations of the petition; proof was taken and on May 12, 1919, the case being regularly submitted, a judgment was entered reciting that the case

having been submitted to the court for final judgment on the pleadings, exhibits and proof, it was adjudged that the plaintiffs were entitled to the relief sought in their petition; that the judgment rendered on March 9, 1907, in the former action was fraudulent and void; that said judgment be set aside and held for naught, also the sale made under the judgment by the master commissioner and the deed made by the master commissioner and the order confirming the same. It was further adjudged that plaintiffs were the owners of the tract of land in controversy and the case was referred to the master commissioner to hear proof as to the value of the timber removed from the land since the death of Samuel White, and by whom removed, also as to the value and amount of advancements made by Samuel White to his children and the value of the rents of the property since it was sold under the former judgment and what improvements had been made on it and how far these improvements enhanced the value of the property. The commissioner was directed to rent the property until January 1, 1920, and report at the July term of the court. It was further adjudged that George W. Noble should be subrogated to all the rights of the heirs of Samuel White, from whom he had purchased the land.

The defendant superseded the judgment but did not prosecute an appeal, and on January 29, 1920, by agreement of the parties, the supersedeas bond was set aside. On May 28, 1920, the plaintiffs amended their petition, making John Bush and Jasper Mullins parties to the action, alleging that they were claiming a part of the land. Mullins filed an answer pleading that he had bought the land he claimed from Deaton before the judgment in the former case was set aside and that the judgment as to him was void. He then makes this allegation: ''He says that he is an innocent purchaser for value and that the plaintiffs are thereby estopped to deny his title.'' A reply was filed to his answer and counterclaim; the commissioner took proof and filed his report; exceptions were filed to the report and on December 18, 1920, the court rendered a judgment adjudging that the judgment rendered on May 12, 1919, was an interrogatory order and that the same was not supported by the record herein and that it be cancelled, held for naught, and it was further adjudged that the plaintiffs were not entitled to any of the relief sought therein and their petition was dismissed.

From this judgment Jane Watts, Katie Neace and Mahala Deaton appeal.

The word interrogatory in the judgment is plainly a clerical error for interlocutory. The first question to be determined on the appeal is: Was the judgment of May 12, 1919, interlocutory or final? If it was a final judgment the court was without authority a year after it was rendered to set it aside. The petition to open the judgment rendered in 1907 was a proceeding brought under section 518 of the Code, and the judgment of May, 1919, granted the plaintiffs the relief sought by setting aside the judgment and cancelling the deeds made under it. Such a judgment is final and not interlocutory.

"At the outset we are met by the contention that the judgment is not a final order from which an appeal will lie, but the contention is without merit. The suit was brought under section 518, Civil Code, and it is well settled that an appeal will lie from an order vacating a judgment and granting a new trial in such a proceeding." Davidson v. Richmond, 196 Ky. 555.

The judgment of May, 1919, not only set aside the judgment and all the proceedings and the deed made in the former action, but it adjudged that all the children and grandchildren of the deceased, Samuel White, were the legal owners of the tract of land in controversy, and it placed the land in the hands of the receiver of the court with directions to rent it out. This was necessarily a final judgment although it was necessary to adjust the question of rents and profits and improvements with the defendants and also to determine the amount of advancements to the children before the land could be divided, for the court by its judgment not only settled the question of title but by its receiver took charge of the land, which he directed to be rented out. It was such a judgment as operated to divest rights in such a manner as to put it out of the power of the court making the order, after the expiration of the term, to place parties in their original condition. Harrison v. Lebanon Water Works, 91 Ky. 255. It is not essential that a judgment to be final should settle all the rights existing between the parties. It is only required that it should determine the issues involved in the action, and it is none the less final because other orders are necessary to carry it into effect. 23 Cyc. 672; Weber v. Lightfoot, 152 Ky. 83.

Appellees have taken a cross-appeal from the judgment of May 12, 1919. But this appeal was not taken

until November 2, 1922, or more than three years after that judgment was rendered. The cross-appeal is therefore dismissed as the time for taking an appeal had expired before the appeal was taken.

It is not material now whether the judgment of May 12, 1919, was correct or incorrect. No errors in that judgment may be corrected now. It is conclusive upon the parties who were then before the court, and their rights must be adjudicated pursuant to it. Jasper Mullins and John Bush were not then parties to the action, but as we understand the record they both claim under purchases made from Noble since the institution of this action. At common law a purchaser *pendente lite* took subject to the judgment rendered in the action and was bound thereby. But by section 2358a-1, Kentucky Statutes, this rule does not apply to a subsequent purchaser for value and without notice, unless notice as therein provided is filed in the county clerk's office. It does not appear that any such notice was given; but to exempt Jasper Mullins from the common law rule he must plead, and if denied, show that he is a subsequent purchaser for value and without notice as provided in the statute; for if he is not such he is bound by the judgment.

> "A stream rises no higher than its source. Ordinarily a vendee gets no more than his vendor has. But an exception is made in favor of a *bona fide* purchaser without notice. He is not bound by secret trusts existing against his vendor. To entitle him to this advantage, however, he must plead the facts showing that he is a *bona fide* purchaser without notice." Deskins, &c. v. Big Sandy Co., 121 Ky. 609.

Mullins avers in his answer that he is an innocent purchaser, but this is a mere statement of a conclusion of law. The facts necessary to be stated in such an answer are set out in the opinion above referred to. To same effect see Brogan v. Porter, 145 Ky. 587.

To be an innocent purchaser the vendee must not only have bought without notice but he must have paid the consideration before he had notice of the infirmity in the title. Hardin v. Harrington, 11 Bush 367.

On the return of the case to the circuit court Jasper Mullins will be allowed to amend his answer and either party will be allowed to take further proof if they desire to do so. The court will then pass on the exceptions filed

to the commissioner's report and adjust the rights of the parties under the judgment of May 12, 1919.

Judgment reversed on the original appeal and cause remanded for further proceedings consistent herewith. The cross-appeal is dismissed.