## Chenault's Guardian v. Metropolitan Life Ins. Company et al.

(Decided March 22, 1932.)

(As Modified on Denial of Rehearing Nov. 15, 1932.)

484

E. S. WIGGINS, STEPHEN D. PARRISH, STOLL, MUIR, TOWNSEND & PARK, GAYLE A. MOHNEY and W. W. MEEKS for appellant.

BURNAM & GREENLEAF, MORRIS & JONES, and D. O. MYATT for appellees.

OPINION OF THE COURT BY STANLEY, COMMISSIONER— Reversing.

The opinion relates to a power granted in a deed and the rights of an infant remainderman in property mortgaged to secure a loan of $16,500 made to a vendee of the donee of the power.

Mrs. Bettie D. Chenault owned in fee a farm containing 221.75 acres called the "Miller Place," and also an undivided one-third interest in fee in another farm containing 371.68 acres called the "Anderson Chenault Place." The other two-thirds interest in this farm was owned jointly by her sons, J. D. Chenault and C. F. Chenault. On January 22, 1907, in consideration of an annuity of $300 to be paid her by each of the sons, and for love and affection, Mrs. Chenault conveyed her property to her sons jointly "during their natural life and at their death to their children, and, if none, then to my heirs." The habendum is as follows:

"To have and to hold unto the second parties during their natural lives and at their death to their children and in the event that either of second parties should die without living children the interest of such one to go to the children of the survivor and any other grand-child or children, I might have in such event and in the event neither of second parties left children at their death and first party had no grand children living at the death of second parties then the land hereby conveyed to go and descend to my heirs at law in fee.

"The second parties are hereby given the right to sell and convey by deed in fee without the intersection (sic) of a court or any judgment or order of any court the land hereby conveyed on

either tract of land hereby conveyed but the proceeds arising from said sale or sales must be reinvested in real estate under the same terms and limitations set out in this deed.

"This reinvestment is incumbent on the second parties only a purchaser from either of them not being required to see to the reinvestment of the proceeds arising from any sale of the lands in fee by either of second parties."

Briefly stated, the conveyance was of a life estate to each son, with remainder to their respective children or to the grantor's grand children or her heirs at law, as the contingencies might develop. But the life tenants were empowered to sell for reinvestment the estates so conveyed them without obtaining the authority of the court, conditioned, however, upon the investment of the proceeds in other real estate, which should be held under the terms and limitations of the deed. The purchaser was relieved of responsibility of seeing that the terms of the trust respecting the reinvestment were carried out.

Acting under that authority, on January 3, 1910, the two brothers exchanged the interest which each had in the two farms. J. D. Chenault conveyed his entire interest in the Miller farm to C. F. Chenault, and he conveyed his interest in the other place to J. D. Chenault. Before proceeding with the development of the case to the ultimate legal questions, we may consider the query whether the power to sell granted by the mother included or contemplated an exchange of interests in the land.

Strictly speaking, to sell property is to transfer it to another in consideration of a price paid or agreed to be paid in money. Commonwealth v. Davis, 12 Bush (75 Ky.) 240. However, since the intention and authority of the grantor in the deed before us was that the specific land might be disposed of for the purpose of acquiring other land, we have no doubt that such an exchange was within her contemplation and is within the terms of the power. Although some courts hold otherwise (Perry, on Trusts, sec, 769; 49 C. J. 1271; Compare Ross v. Barr's Ex'r, 53 S. W. 658, 21 Ky. Law Rep. 974), such was the construction given a clause in a will granting power to a devisee to sell and convey

lands devised to him for reinvestment in other lands according to his discretion, in Broaddus v. Centers (Ky.) 116 S. W. 742. See also, Goodloe's Ex'r v. Davie & Collier, 4 Ky. Opin. 363. The exchange, therefore, was authorized and is valid. Now, the provisions of the power were that whatever property might be received in substitution of the original trust estate by way of reinvestment should be held upon the same terms. Although for a one-half trust interest in the Miller farm C. F. Chenault conveyed to J. D. Chenault a one-third fee interest and a one-third trust interest in the Chenault farm, and undertook to convey a fee-simple title in all of it; nevertheless all of it became subject to the conditions of the mother's deed. That was the reinvestment of J. D. Chenault's trust estate in the Miller farm. The result of the exchange was that J. D. Chenault became the owner of a two-thirds interest in the Chenault farm impressed with the trust to be added to the one-third interest he already owned in fee.

In the same month, upon the ex parte petition of J. D. Chenault and his mother, the Madison county court, through commissioners, partitioned this Chenault farm. It appears that in the proceeding J. D. Chenault was regarded as owning a two-thirds interest in fee, and the land was so divided as to sever and set apart one-third as being held under the trust and conditions of the mother's deed. By the commissioner's report, which was confirmed, lines were established whereby 286.68 acres were laid off as that owned in fee, and 85 acres, including the mansion house and other improvements, as the life or trust estate. Subsequently Chenault sold and conveyed to McKinney 152.93 acres of the tract said to be held in fee, under the partition deed, leaving 218.75 acres in the entire tract, of which, according to the record, 133.75 were held in fee and 85 acres as a life estate. Notwithstanding that partition proceeding, in July, 1922, J. D. Chenault and others (adult contingent remaindermen) filed another petition in the county court in which his infant daughter (born in 1915) and the infant children of C. F. Chenault were made defendants and brought before the court by a guardian ad litem. This petition set up the ownership of the remaining 218.75 acres as being two-thirds in fee and one-third for life, and asked for a partition in that proportion. The former proceeding and severance were wholly ignored. The county court in this latter

case, through commissioners, divided the tract, and it appears that a deed was executed by a commissioner of the court whereby Chenault was conveyed 145.50 acres in fee and 73.25 acres for life under the terms of his mother's deed instead of the 85 acres originally set apart. The right of one owning property in this way to have the life interest set apart was declared in Orsburn v. Orsburn, 196 Ky. 176, 244 S. W. 417. However, so far as the record before us discloses, several requirements of section 499 of the Civil Code of Practice, under which a partition may be had, were not complied with in the first proceeding. But neither of those proceedings is attacked in this case, and we do not undertake to pass upon the validity of either of them.

In 1925 J. D. Chenault had become heavily in debt, and it appears that there were mortgages on some part of this land. Louis Dunbar, who was engaged in the real estate business and in procuring farm loans through several financial institutions, was applied to for a loan on this property by Mr. Chenault. It is not clear at just what time negotiations were begun with Dunbar looking to the lending of the money which gave rise to this litigation. But it appears that there was an application made through him to the Southern Trust Company, and, after some examination of the title, there was prepared by the trust company a deed from J. D. Chenault and wife to Dunbar for the entire 218.75 acres for the recited consideration of "One dollar and other good and valuable consideration" for 145.50 acres (the fee-simple portion) and "$1,000 cash in hand paid" for 73.25 acres (the life estate). This deed was executed on June 29, 1925, and simultaneously Dunbar reconveyed the property to Mary C. Chenault, wife of J. D. Chenault, for "One dollar and other good and valuable consideration." As of July 1, 1925 (acknowledged July 11th), Mary C. Chenault and her husband executed a mortgage on the entire tract of 218.75 acres to the Southern Trust Company, its successors and assigns, to secure the payment of her notes aggregating $16,500. It contained a covenant of general warranty. Bettie D. Chenault joined in the mortgage for the express purpose of subordinating any lien she might have had by reason of the provisions of her deed to her two sons. The proceeds were consumed in the payment of the debts of J. D. Chenault and the cost of procuring the loan. In August following, the Southern Trust

Company, by writing, sold, assigned, and transferred the notes and mortgage to the Metropolitan Life Insurance Company, the notes being indorsed without recourse. The assignments were duly placed of record.

Upon default in the payment of the second note, the Metropolitan Life Insurance Company precipitated the maturity and sued for its debt and the enforcement of the mortgage. Robert Clay and Andrew Clay filed an intervening petition setting up a second mortgage on the property to secure them in the payment of about $2,500. Default judgment was rendered on these petitions, and the property was ordered sold to satisfy the liens.

Before that order was carried out, Bettie Chenault, the infant daughter of J. D. and Mary Chenault, by her statutory guardian, filed an intervening and cross petition in which were set up the facts with respect to the title to the property and her construction of the conveyances, which was in effect that those transferring title to Mary C. Chenault through Dunbar were made with the knowledge and collusion of the Southern Trust Company, were without consideration, and were made for the wrongful purpose of converting a life estate into a fee-simple title upon which a mortgage to the trust company might be based. It was also averred that that mortgage and the mortgage of the Clays did not affect the petitioner's remainder interest in the property. In addition to relief in several specific ways, she further prayed that the deeds to Dunbar and Mary C. Chenault and the respective mortgages be annulled, and that the order of sale be vacated or modified so as not to disturb any of her rights. Issues were joined, and, after trial, the court dismissed the intervening and cross petition of the guardian, and the master commissioner was directed to proceed with the execution of the order of sale. This appeal is from that judgment.

We may for the moment put aside regard for the fee-simple estate of J. D. Chenault in the property. Proceeding upon the premise that the conveyance of C. F. Chenault to him of his interest in the property is valid as determined above, and assuming without deciding that the establishment of the division lines by the county court was also effectual, the first question for disposition is whether the transaction by which the title was transferred to Mary C. Chenault through Dunbar is

valid; that is, whether the power to sell for reinvestment authorized a gift of the property subject to that power. It is conceded that no part of the recited consideration in either deed was paid and that Dunbar was simply a conduit through which title was passed to the wife without consideration.

It was the manifest intention of the grantor, Bettie D. Chenault, to convey the estate in trust to her son for his use and benefit, but to be conserved for the ultimate beneficiaries. To accomplish that purpose, she restricted the exercise of the power of appointment and the alienation of the title to a sale for reinvestment only. It is the general rule that the power of appointment must be exercised for the benefit of the parties entitled to it, and not with a view of benefiting the appointee or favoring a person or class other than those in whose favor the power is given. Perry on Trusts, sec. 254; Bigstaff's Trustee v. Bigstaff, 165 Ky. 251, 176 S. W. 1003; Powers v. Burke, 194 Ky. 796, 241 S. W. 53. It must be executed, not only in strict adherence to its substance, but in conformity with its terms, and its exercise is limited to an exact performance of the duty imposed upon the donee or appointor. Perry on Trusts, sec. 475, 511b, 783; Greenway v. White, 196 Ky. 745, 246 S. W. 137, 32 A. L. R. 1385; Chenoweth v. Bullitt, 224 Ky. 698, 6 S. W. (2d) 1061. If the power be not exercised in good faith and for the purposes created, and especially if it be with the view of benefiting the donee or appointor, it will be deemed fraudulent and void as against the parties entitled to its benefits. Cromie, Trustee v. Bull, 81 Ky. 646; Barrett's Executor v. Barrett, 166 Ky. 411, 179 S. W. 396, L. R. A. 1916D, 493; Chenoweth v. Bullitt, supra.

Accordingly, even where the purpose of sale and direction as to the use of the proceeds is not attached to the power, it is held that the authority to sell does not carry with it the power to make a gift of the subject-matter or convey it without consideration, and such transfer is invalid. It is all the more logical, just, and certain that the property may not be given away, or conveyed without consideration, where there is a specific purpose and direction stated in the grant such as a sale for reinvestment. 49 C. J. 1271; Perry on Trusts, sec. 769; Browning v. Ashbrook's Ex'r, 175 Ky. 755, 195 S. W. 105; Miller v. Miller, 197 Ky. 753, 247 S. W. 965; Myrick v. Williamson, 190 Ala. 485, 67 So. 273;

Taylor v. Phillips, 147 Ga. 761, 95 S. E. 289; Rayl v. Golfinopulos (Mo. Sup.) 264 S. W. 911; Jones v. Stamps, 120 Miss. 60, 81 So. 651; Leonard v. Wheeler, 261 Mass. 130, 158 N. E. 502; Stocker v. Foster, 178 Mass. 591, 60 N. E. 407; Cales v. Dressler, 315 Ill. 142, 146 N. E. 162; Merchants' Trust Co. v. Russell, 260 Mass. 162, 157 N. E. 338.

It is clearly apparent, therefore, that the conveyance to Mrs. Chenault was and is void in so far as it affects the right of the appellant and any contingent remaindermen.

Upon the same principle, the mortgage on the property to the appellees must to the same extent fail. Although a mortgage may be regarded as a conditional or qualified sale, it is quite apparent, and is so specifically held, that a power to sell is not a power to mortgage, unless there be something in the instrument granting it to show that a mortgage was within the intention of the donor. Perry on Trusts, sec. 768; Hirschman v. Brashears, 79 Ky. 258; Fidelity Trust Co. v. Hawkins, 139 Ky. 803, 90 S. W. 249; Ferry v. Laible, 31 N. J. Eq. 566; O'Brien v. Flint, 74 Conn. 502, 51 A. 547; Allen v. St. Louis Nat. Bank, 120 U. S. 32, 7 S. Ct. 462, 30 L. Ed. 573. Where authority to sell is restricted to the purpose of reinvesting the proceeds in other land, obviously a mortgage for the benefit of the donee only is a clear departure and violation of the power. It cannot conceivably be regarded as within the contemplation of the donor. Wilson v. Md. Life Insurance Co., 60 Md. 150; Norris v. Woods, 89 Va. 873, 17 S. E. 552.

In Bowling v. Bank of New Haven, 219 Ky. 731, 294 S. W. 499, 501, a trustee and life tenant jointly were given power to sell real estate for reinvestment in other lands. They sold the estate in hand for $14,200, and invested the proceeds in another farm costing $26,500 to be held under the same trusts and limitations. A vendor's lien was retained for the balance. In a suit to foreclose the lien, the remaindermen denied the power in the donees to incumber their interest. It was held that such a power did not exist, but that the beneficiaries or cestui que trustent might consent, and those who had consented were estopped to question the act. The rights of the infant remaindermen and others not consenting were preserved, although the equities required a pro tanto diminution of their estate due to

depreciation in value of the reinvestment. Following Vickers v. Vickers, 189 Ky. 323, 225 S. W. 44, it was said:

"Under the will of G. K. Bowling, the trustee was without power, without the consent of the cestui que trustent, to burden the trust estate by a mortgage or purchase-money lien."

See, also, Rudd v. Travelers' Insurance Co., 73 S. W. 759, 24 Ky. Law Rep. 2141; E. H. Shelman & Co. v. Livers' Ex'x, 229 Ky. 90, 16 S. W. (2d) 800.

It is argued by the appellees that, when Bettie D. Chenault, the donor of the power, joined in the mortgage, her act gave full authority to the donee to execute the mortgage, and also ratified the conveyance to Dunbar. The expressed purpose for which Mrs. Chenault joined in the mortgage would seem a sufficient answer to the argument. It is recited in the mortgage that she joined in its execution "for the sole purpose of subordinating and she does hereby subordinate any and all liens or encumbrances she has in the property herein described by reason of the provisions of the deed" from herself to her sons, "and she hereby consents that the mortgagee herein shall have a superior lien to any and all of her rights set out in said deed, but she joins herein for no other purpose than to subordinate her lien as herein stated." By her deed she had disposed of all her title, and placed it ultimately in contingent remaindermen, who did not either directly or by representation join in the conveyances or mortgage. A power, coupled with an interest, is not revocable. Hancock v. Byrne, 5 Dana, 514; 21 R. C. L. 810. It was beyond the grantor's power to deprive the grantees of their interest in the property, had she undertaken to do so. Garrott v. McConnell, 201 Ky. 61, 256 S. W. 14; Underhill v. U. S. Trust Co., 227 Ky. 444, 13 S. W. (2d) 502.

The appellees argue that the Southern Trust Company, as mortgagee, was a purchaser for value without notice, and that the record of title showed a valid exercise of the power vested in J. D. Chenault. True it is that the conveyance to Dunbar recited a consideration, and the purchaser under the terms of the power was not required to look to the investment. Ordinarily, the purchaser is not responsible for any diversion of the proceeds from the stipulated purpose, although he may

be if he knew of an intended diversion. Whitfield v. Burke, 86 Miss., 435, 38 So. 550, 109 Am. St. Rep. 714, 4 Ann. Cas. 370. The trust was not destroyed by the conveyance. Hughes v. Bent, 118 Ky. 609, 81 S. W. 931, 26 Ky. Law. Rep. 453. The grantee, Dunbar, and his grantee, Mrs. Chenault, admittedly knew that the conveyances were not made in consummation of an actual sale, but merely in pursuance to a plan or contrivance to vest a fee-simple title in her to enable the execution of a mortgage to get money with which to pay her husband's debts. All of the circumstances seem to show an active collaboration by the Southern Trust Company in the consummation of the plan. Certainly, do they show a knowledge of it. Indeed, that is tacitly admitted by the failure to contradict or explain the evidence of Dunbar, which is sufficient to warrant the conclusion stated. We may go further. Aside from his testimony, it is apparent from the documents that arrangements for the loan had been made before the conveyance by Chenault to his wife through the intermediary. That was done on June 30th, and the mortgage is dated July 1st. Before paying the money, ten days later the company obtained the written authority of Mrs. Chenault to disburse practically all of it to her husband's creditors. Moreover, Chenault's deed was of record, and all subsequent purchasers or mortgagees were, of course, charged with notice of his limitations and of the powers he possessed. Vickers v. Vickers, supra. The terms of his deed must have been specifically called to the attention of the company, for, as stated, his grantor was required to join in the mortgage.

In Webb v. John Hancock Mutual Life Insurance Co., 162 Ind. 616, 69 N. E. 1006, 1012, 66 L. R. A. 632, may be found another effort so to transfer a title that money might be borrowed on it as on an absolute title, and in many respects the transactions were like those in the case at bar. The circumstances and facts of which the lender had knowledge were such that it appeared, said the court, "that its neglect to make further inquiry can only be explained upon the theory that it desired to remain ignorant. It was not at liberty to close its eyes and make no further inquiry or investigation, and then, as it does in this action, attempt to shield itself upon the plea that it was ignorant of the purpose of appellants to evade the law by executing the

conveyances in question." See, also, Ky. Lumber & Mill Work Co. v. Kentucky Title Savings Bank & Trust Co., 184 Ky. 244, 211 S. W. 765, 5 A. L. R. 391.

We conclude the trust company was charged with notice of the limitations of J. D. Chenault's authority, and that it is not entitled to be given protection against the adverse claims and rights of the remaindermen in the estate mortgaged to it.

Nor was the appellee, Metropolitan Life Insurance Company, entitled to judgment as a bona fide purchaser without notice. Although the issue was raised and tried, it did not plead or prove facts sufficient to show itself to be a bona fide purchaser for value without notice. Deskins v. Big Sandy Co., 121 Ky. 601, 89 S. W. 695, 28 Ky. Law Rep. 565; Brogan v. Porter, 145 Ky. 587, 140 S. W. 1007; Long v. Howard, 229 Ky. 369, 17 S. W. (2d) 207.

The validity of the various transactions and the mortgage, so far as they affect the estate of J. D. Chenault, are not questioned. That estate is subject to the appellee's lien, but we are of the opinion that they are invalid in so far as they affect the estate of remaindermen in the trust. The court could decree a sale only of the interests in the land of the mortgagors, and a purchaser could acquire nothing more.

The complications arising from the partition proceedings in the county court were disclosed, but the case relating to them was not developed. Upon this point further pleadings and proof would seem to be necessary in order to determine just what the interests of J. D. Chenault and his mortgagees are. That should be permitted and a decree rendered thereon. Ellis v. Darby Coal Co., 238 Ky. 692, 38 S. W. (2d) 673.

The judgment is reversed, with directions to enter judgment conforming to this opinion and for further consistent proceedings.