## Metropolitan Life Ins. Co. v. Chenault et al.

Dec. 15, 1939.
As Modified on Denial of Rehearing March 22, 1940.

W. J. Baxter, Judge.

E. R. Johnson and G. Murray Smith for appellant.

Stoll, Muir, Townsend & Park for appellees.

OPINION OF THE COURT BY CHIEF JUSTICE RATLIFF—
Reversing.

In January, 1907, Bettie D. Chenault conveyed to her two sons, C. F. Chenault and J. D. Chenault, two ad-

jacent tracts of land in Madison County, Kentucky, for life, with remainder to the grantees' children, with the right and power in grantees to sell the land for a reinvestment. We here copy the part of the deed pertinent to this case:

"This deed of conveyance made by and between Bettie D. Chenault of Richmond, Madison County, Kentucky, of the first part, and Christopher F. Chenault and Jeptha D. Chenault both of Richmond, Madison County, Kentucky, of the second part.

"Witnesseth:

"The first party for and in consideration of One Dollar and love and affection to my two sons and the further consideration that they each pay to me annually during the remainder of the natural life of the first party Three Hundred Dollars each said annuity due and payable January 1st each succeeding year hereafter does hereby bargain, sell, grant and convey to the second parties during their natural life and at their death to their children, and if none then to my heirs the following described tract or boundary of land situated on the waters of Otter Creek in Madison County, Kentucky, and more specifically described as follows, to-wit: (here follows description).

"To have and to hold unto the second parties during their natural lives, and at their death to their children and in the event that either of second parties should die without leaving children the interest of such one to go to the children of the survivor and any other grandchild or children, I might have in such event, and in the event neither of second parties left children at their death and first party had no grandchildren living at the death of second parties then the land hereby conveyed to go and descend to my heirs at law in fee. The second parties are hereby given the right to sell and convey by deed in fee without the intervention of a court or any judgment or order of any court the land hereby conveyed and either tract of land hereby conveyed, but the proceeds arising from said sale or sales must be reinvested in real estate under the same terms and limitations set out in this deed. This re-

investment is incumbent on the second parties only, a purchaser from either of them not being required to see to the reinvestment of the proceeds arising from any sale of the land in fee by either of the second parties.''

The two tracts of land are known in this record as the ''Anderson Chenault tract'' and the ''Miller tract,'' and it appears that Bettie D. Chenault owned the Miller tract in fee and a one-third undivided interest in the Anderson Chenault tract. However, the Miller tract only, with certain exclusions therefrom, is in controversy in this action.

In 1910, J. D. Chenault conveyed his interest in the Miller tract to C. F. Chenault and in turn the latter conveyed to the former his interest in the Anderson Chenault tract, whereby C. F. Chenault became the owner of J. D. Chenault's entire interest in the Miller tract. However, in a previous action involving the deeds executed between J. D. Chenault and C. F. Chenault, above referred to, were held to be a reinvestment pursuant to the power provided in the Bettie D. Chenault deed. See, Chenault's Guardian v. Metropolitan Life Insurance Co., 245 Ky. 482, 53 S. W. (2d) 720.

In October, 1911, C. F. Chenault and his wife, Nancy M. Chenault, executed a deed of conveyance to Joe P. Chenault purporting to convey the fee simple title to the Miller tract and, soon thereafter, in November, 1911, Joe P. Chenault conveyed the same property to Nancy M. Chenault, also purporting to convey the fee simple title thereto.

In December, 1924, C. F. Chenault and Nancy M. Chenault borrowed of the Southern Trust Company the sum of $34,000 evidenced by their joint promissory notes and to secure which they executed a mortgage to the Miller tract of land. In February, 1925, the Southern Trust Company assigned the notes and mortgage to the appellant, Metropolitan Life Insurance Company (hereinafter called the Metropolitan.) It appears that certain payments were made on the notes reducing them to $22,682.50, but about April 1, 1930, the makers of the notes became in default in payments and in March, 1931, the Metropolitan brought this action in the Madison circuit court seeking judgment for the unpaid balance of

the notes and to foreclose the mortgage executed to secure same.

Certain other parties who had claims against or interest in the property were made party defendants all of whom filed answers, but their claims are not involved in this appeal. The case was carried on the docket and certain steps taken from time to time until October, 1933, when the appellees, Anderson Hume Chenault, Mary Chenault Carr and Nancy Chenault Baker, children of C. F. and Nancy M. Chenault, filed their intervening petition alleging that by virtue of the deed from Bettie D. Chenault to C. F. and J. D. Chenault, they became vested with title as remaindermen to the Miller tract of land after the expiration of the life estate conveyed in the same instrument to C. F. Chenault and J. D. Chenault, and pleaded and relied upon that deed. They further alleged that the deeds executed in 1911, by C. F. Chenault and Nancy M. Chenault to Joe P. Chenault and from J. P. Chenault to Nancy M. Chenault purporting to convey a fee simple title to the property were without consideration and in violation of the terms of the deed from Bettie D. Chenault to J. D. and C. F. Chenault and that the same were fraudulent and void and insufficient to convey the interest of the intervenors. They also alleged that the mortgage executed in 1924, by C. F. Chenault and Nancy M. Chenault to the Southern Trust Company was also void and without effect insofar as it purported to affect the intervenors as remaindermen, and likewise the assignment of the mortgage by the Southern Trust Company to the Metropolitan was insufficient to create any lien in favor of the Metropolitan insofar as it purports to affect the intervenors as remaindermen.

The intervenors further alleged that there had never been a sale or exercise of the power contained in the Bettie D. Chenault deed to C. F. and J. D. Chenault. To this intervening petition, Thomas Chenault Kingsley, the infant son of Sue Chenault Kingsley, was made a defendant.

The Metropolitan filed its answer to the intervening petition traversing the allegations thereof and affirmatively pleaded that it purchased the notes secured by the mortgage from Nancy M. and C. F. Chenault to the Southern Trust Company, before maturity, and paid

face value therefor; that at the time it purchased said notes and mortgage it had no knowledge or notice of any defect in the title of the real estate mortgaged to secure the notes or any defect relating to the notes; that it believed at the time it purchased said notes and mortgage that the lien on the real estate by which said notes were secured was free of any defect and such was represented to it by Nancy M. and C. F. Chenault; that these notes were negotiable promissory notes under the laws of the state of Kentucky.

It further alleged that the deed from C. F. Chenault and wife to J. P. Chenault dated October 18, 1911, was recorded in the office of the county clerk of Madison County, Kentucky, on November 18, 1911, and that the said deed recited the sale and embraced the consideration in the usual form and acknowledged receipt of the full payment of the purchase price, and conveyed a fee simple title to the said 221¾ acres (Miller tract) with covenants of general warranty and referred to the deed containing the power as the source of title and on its face exhibited the usual legal and regular exercise of the power of sale contained in the deed from Bettie D. Chenault, which provides that a purchaser was not required to see to the investment of the proceeds. It also alleged that the deed from Joe P. Chenault to Nancy M. Chenault dated November 7, 1911, was recorded on November 18, 1911, in the said county clerk's office and it also recited the sale was for a valuable consideration and acknowledged receipt of the price in full and conveyed the fee simple title with covenants of general warranty; that the said deeds from C. F. Chenault and wife to J. P. Chenault and from J. P. Chenault to Nancy M. Chenault had been recorded in the office of the county court clerk of Madison County for a period in excess of thirteen years.

It was further alleged that at the time of the execution and recording of the mortgage to the Southern Trust Company, Nancy M. Chenault was in possession of the said tract of land claiming it absolutely and in fee simple title and to have purchased it for a valuable consideration and claiming to have paid for it in full; that she had been in such possession since November 18, 1911, the date the deed conveying said property to her was lodged for record, and that she continued since that

time to remain in adverse possession of the property, claiming the same against all the world, and was so in possession and making said claim at the time of the execution of said mortgage to the Southern Trust Company and at the time of the sale and assignment of said notes and mortgage to the Metropolitan.

The Metropolitan further alleged that after Joe P. Chenault conveyed said tract of land to Nancy M. Chenault (November 1911), she represented to the North Western Mutual Life Insurance Company of Minneapolis, Minnesota, that she was the owner of said property and entitled to incumber and sell the same and borrowed from the said North Western Mutual Life Insurance Company a large sum of money and she together with her husband, C. F. Chenault, mortgaged said land to said North Western Mutual Life Insurance Company by a mortgage dated January 2, 1912, which was duly recorded in the county court clerk's office in Madison County, Kentucky, and which mortgage contained, among other things, this provision:

"To have and to hold the same to the party of the second part, its successors and assigns, and parties of the first part hereby covenant that they have good right to sell and convey said premises, which are free of incumbrances, and hereby warrant the title thereto against all persons whomsoever."

It further alleged that on January 12, 1917, Nancy M. Chenault again represented to the said North Western Mutual Life Insurance Company that she was the owner of said tract of land and borrowed from said insurance company the sum of $13,000 and again mortgaged the same tract of land to secure said loan and again made the same representation of warranty as to title as that quoted above.

It is also alleged that on August 10, 1922, Nancy M. Chenault represented to the Louisville Joint Stock Land Bank of Louisville, Kentucky, that she was the owner of said tract of land and borrowed from said land bank the sum of $17,000, and to secure which she mortgaged the said land to the bank and that mortgage contains a representation in reference to title and right to mortgage said property as the ones contained in the previous two mortgages.

It further alleged that at the time it purchased said notes and mortgage it was ignorant of any purpose on the part of C. F. Chenault in the execution of the deed to Joe P. Chenault, and had no notice of any purpose on the part of Joe P. Chenault by his deed to Nancy M. Chenault, or either of said deeds, to defraud the parties who might claim as remaindermen under the provisions of the deed from Bettie D. Chenault to her sons; that at the time it purchased said notes and mortgage the record of title in the county clerk's office of Madison county, Kentucky, exhibited instruments showing a valid sale under the power of said deed from Bettie D. Chenault and the valid exercise thereof, and that it, the Metropolitan, is a bona fide purchaser for value, before maturity, without notice of any defects.

It further alleged that the intervenors had notice of all the mortgages of record referred to above, and knew that C. F. Chenault and Nancy M. Chenault were claiming the fee simple title to the property and using same as their own and also knew of the mortgage to the Southern Trust Company and the assignment thereof to the Metropolitan, and made no objection thereto and acquiesced therein and made no claim to any interest in the property and thereby induced the parties to take mortgages on the property believing that the said mortgagors had the right to mortgage same. It was also alleged that C. F. and Nancy M. Chenault subdivided a part of the said Miller tract into lots and sold same at public auction, representing to the public that they were vested with fee simple title thereto and a number of lots were sold to various bidders at said sale and the intervenors stood by and acquiesced therein and permitted various people to purchase lots at said sale under the belief and representation that C. F. and Nancy M. Chenault were vested with a fee simple title to the property and had the right to sell same, all of which conduct on the part of the intervenors were pleaded as an estoppel.

The intervenors, appellees, filed a general demurrer to all affirmative matters pleaded in the answer of the Metropolitan to the intervening petition.

It is insisted for the Metropolitan that since it was not alleged in the intervening petition that the Metropolitan was a party to or had notice of any fraud, if any

there were, in the execution of the deeds from C. F. and Nancy M. Chenault to Joe P. Chenault and from J. P. Chenault to Nancy M. Chenault, or that the Metropolitan had any notice of or was a party to any fraud, if any, in the execution of the mortgage to the Southern Trust Company, and, since the intervenors' demurrer to the answer of the Metropolitan admitted all facts therein pleaded, the court should have carried the demurrer to the answer back to the intervening petition and sustained it thereto. However, since the case may be disposed of on the merits, we express no opinion as to whether or not the demurrer should have been sustained to the intervening petition, or whether or not the plea of estoppel is sufficient.

The trial court sustained demurrers to paragraphs two and four of the answer to the intervening petition, whereupon the intervenors filed a reply traversing the affirmative allegations of paragraph three, and by subsequent pleadings the issues were made and the evidence taken and upon a submission of the case the chancellor held and adjudged in effect that the deeds executed in 1911, from C. F. and Nancy M. Chenault to Joe P. Chenault and from Joe P. Chenault to Nancy M. Chenault and the mortgage executed by Nancy M. and C. F. Chenault to the Southern Trust Company and the assignment of said mortgage and notes by the Southern Trust Company to the Metropolitan did not affect the intervenors' interest as remaindermen in the land under the deed of Bettie D. Chenault. The court determined the case in favor of the intervenors and entered judgment dismissing the Metropolitan's petition. This appeal follows.

There is no contention made that the Metropolitan did not purchase the notes and mortgage before maturity and for a valuable consideration; hence, the determinative question is, whether or not the Metropolitan is a bona fide purchaser or mortgagee.

Appellees concede that a mortgagee may be a bona fide purchaser, the same as a vendee in a deed may be, but insists, however, that the Metropolitan is not a bona fide mortgagee, since it is shown by the evidence that the deeds executed in 1911, from C. F. Chenault and wife to Joe P. Chenault were without consideration and not intended by the grantors to be a sale for reinvest-

ment and was a scheme on their part to invest Nancy M. Chenault with the fee simple title in order that she and her husband might mortgage the land to the North Western Mutual Life Insurance Company to secure a loan of money from it.

If the Bettie D. Chenault deed had conveyed a life estate to her two sons with remainder to their children with no right or power whatever in the life tenants to sell the property for any purpose, then the Metropolitan could not claim to be an innocent purchaser or mortgagee, for the face of such deed would have clearly shown that the life tenants had no right to convey or otherwise incumber the property in fee. However, since the Bettie D. Chenault deed gave the life tenants the right to sell the land for reinvestment, and provided that: "This reinvestment is incumbent on the second parties (life tenants), a purchaser from either of them not being required to see to the reinvestment of the proceeds arising from any sale of the land in fee by either of the second parties," we do not think the fact that no reinvestment was made rendered the deed absolutely void *ab initio*, so as to deny protection to an innocent purchaser.

The deed from C. F. and Nancy M. Chenault to Joe P. Chenault is regular on its face, nothing appearing therein to indicate that the sale of the land was not for reinvestment. The Metropolitan was not required to make any investigation to ascertain whether or not there was a resinvestment of the proceeds of the sale, since under the provisions of Section 4846, Kentucky Statutes, and the Bettie D. Chenault deed, it was relieved of this duty.

Appellees place great stress upon the case of Chenault's Guardian v. Metropolitan Life Insurance Co., supra. A reference to that case is sufficient without restating or detailing the questions involved. While there is much in common between that case and the present one, yet, whether or not the Metropolitan was an innocent purchaser was not determined, the court saying [245 Ky. 482, 53 S. W. (2d) 725]:

"Nor was the appellee Metropolitan Life Insurance Company, entitled to judgment as a bona fide purchaser without notice. Although the issue was raised and tried, it did not plead or prove facts suf-

ficient to show itself to be a bona fide purchaser for value without notice. Deskins v. Big Sandy Co., 121 Ky. 601, 89 S. W. 695, 28 Ky. Law Rep. 565; Brogan v. Porter, 145 Ky. 587, 140 S. W. 1007; Long v. Howard, 229 Ky. 369, 17 S. W. (2d) 207.''

In the present case the Metropolitan sufficiently pleaded that it was an innocent purchaser of the notes and mortgage in question; hence, it is to be determined by the evidence whether or not it was a party to or had notice of the alleged fraud committed upon appellees by the deeds of 1911, referred to.

Appellees rely principally upon the face of the record to establish knowledge of fraud on the part of the Metropolitan. However, from what he have already said in reference to the face of the record, that is, the Bettie D. Chenault deed of 1907, and the two Chenault deeds of 1911, and subsequent transactions and events pleaded in the answer and which are not denied by the evidence, showing that after 1911, and before the execution of the mortgage in question, in 1924, Nancy M. and C. F. Chenault mortgaged the land three different times, namely, in 1912, 1917 and 1922, to secure large sums of money loaned to them by various lenders, and also in 1927 subdivided a portion of the land into lots and sold same at public auction and made general warranty deeds to the purchasers. At that time a number of the intervenors were over 21 years of age, and no objections having been made by them or other questions raised relating to the right of the life tenants to mortgage and use the property as their own, we do not think that the record constituted notice to the Metropolitan of the alleged fraud complained of by appellees; but, to the contrary, we think the record was sufficient to induce any reasonably prudent minded person to believe that Nancy M. Chenault was the owner in fee of the property and had the right to mortgage same, unless, however, it appears that the Metropolitan had actual notice of the alleged fraud before it purchased the notes and mortgage of the Southern Trust Company.

The only evidence of actual notice pointed out in briefs of appellees tending to show that the Metropolitan had notice of the fraudulent purpose of the Chenault deeds executed in 1911, and before it purchased the

notes and mortgage of the Southern Trust Company in 1925, is, that C. F. Chenault testified that he told L. A. McLean, the agent of the Southern Trust Company, the purpose of the deeds executed by him, C. F. Chenault, and Nancy M. Chenault to Joe P. Chenault and from the latter to Nancy M. Chenault, stating that he told McLean that they were negotiating with the North Western Mutual Life Insurance Company for a loan and the insurance company suggested that these deeds be made for the purpose of investing Nancy M. Chenault with a fee simple title to the land so that she could mortgage it to secure a loan from the North Western. However, McLean denied the statements of C. F. Chenault and said that the first conversation he had with him on that point was in 1925, and after the Metropolitan had purchased the notes and mortgage of the Southern Trust Company and had paid the money over to the Southern Trust Company or to the Chenaults.

It is insisted for appellees that the Southern Trust Company was the agent of the Metropolitan and notice to the agent was notice to the principal. It is to be remembered, however, that McLean was the agent of the Southern Trust Company, not the Metropolitan, and if it be conceded that C. F. Chenault informed McLean of the nature and purpose of the Chenault deeds executed in 1911, it does not necessarily mean that that constituted notice to the Metropolitan. Apparently, there was some connection between the Southern Trust Company and the Metropolitan in this and other similar transactions. The evidence, however, tends to show that the Metropolitan had the title to the land in question investigated and examined by its own representatives and attorneys before it purchased the notes and mortgage of the Southern Trust Company and did not rely upon the recommendation of the Southern Trust Company or its agents in respect to the title, nor is there any evidence that the alleged conversation between C. F. Chenault and McLean was communicated to any of the agents or representatives of the Metropolitan. The title was examined by various reputable lawyers for the Metropolitan who pronounced the title good and recommended that Nancy M. Chenault was the holder of the fee simple title to the property and had the right to mortgage it.

In Larue's Heirs v. Larue's Ex'rs, 3 J. J. Marsh.

156, 26 Ky. 156, it appears that the executors were authorized to sell certain lands for the purpose only of paying debts against the estate. The executors sold the land for purposes other than paying debts and it is pointed out in that opinion that the executors acted in bad faith in selling more land than was necessary to pay the debts. It was held that the executors would be responsible to the heirs and devisees, but a bona fide purchaser of the land having no notice of fraud of the executors could not be affected. The court said:

> "The testator reposed confidence in them [executors], and gave them authority to act, and thereby, strangers were invited to entertain confidence. It would, therefore, be unjust to permit strangers, who purchased in good faith, to sustain injury from the frauds of the executors."

Applying that principle to the present case, it would appear that Bettie D. Chenault reposed confidence in her sons, the life tenants, and gave them authority to sell the land for reinvestment purposes only and purchasers not being required to see to the reinvestment of the proceeds, it would be unjust and inequitable to permit *bona fide* purchasers to sustain injury because the life tenants improperly used the power and betrayed the confidence reposed in them by their grantor.

Also, in Meeks v. Robards, 157 Ky. 199, 162 S. W. 818, it was held that the purchaser from the trustee who, upon the face of the record, had power to convey the property would not be affected by secret equities. If the Metropolitan had no notice of the alleged fraud committed on the remaindermen by the Chenault deeds executed in 1911, then the fraud was a secret so far as the Metropolitan is concerned, hence, we think the same principle applied in the Meeks case, supra, is here applicable.

Many other like and similar authorities might be cited, but we think it unnecessary to extend this opinion by citation of cumulative authorities.

It is our conclusion, therefore, that the preponderance of the evidence is to the effect that the Metropolitan was neither a party to nor had notice of the fraud alleged to have been committed upon the remaindermen, appellees, and that the Metropolitan was an innocent

purchaser of the notes and mortgage assigned to it by the Southern Trust Company, and took good title thereto.

Wherefore, the judgment is reversed and remanded with directions to set it aside and for proceedings not inconsistent with this opinion.

Whole court sitting, except Judge Tilford.