## Bigstaff's Trustee, et al. v. Bigstaff.

(Decided June 4, 1915.)

### Appeal from Montgomery Circuit Court.

1. **Improvements—Life Estates—Remainders.**—Where a life tenant makes improvements on the land, such as fencing and erecting buildings, it will be presumed that he did so for his own benefit, and he can not charge the land, nor the remainderman, with any part of their cost.

2. **Trusts—Investment of Trust Funds.**—Where one creates a trust by an instrument of writing, and designates in what character of property or securities the trust fund shall be invested, the trustee must follow the instructions literally, unless no such an investment can be made, or supervening circumstances render such an investment unsafe.

3. **Trusts—Investment of Trust Funds.**—The chancellor will not direct trust funds to be invested, contrary to the directions of the instrument creating the trust, unless the investment can not be made, or circumstances become so changed, that it would be unsafe to so invest the funds.

W. B. WHITE, Attorney for appellant Bigstaff's Trustee.

E. W. SENFF, Guardian ad Litem, for appellants.

R. K. KERN for appellee.

OPINION OF THE COURT BY JUDGE HURT—Reversing.

J. M. Bigstaff died testate in Montgomery County, Kentucky, the owner at the time of his death of about two thousand acres of land, and a very large estate in personal property, and by the terms of the fourth clause of his will, he devised to each of his four grandchildren, James and Alexine Bigstaff, and Mary and Margaret Ragan, the sum of $10,000.00 each, to be invested in real estate, and the title thereto to be taken to them, for and during their natural lives, with remainder to their chil-

dren living at the time of their respective deaths, and that a trustee should be appointed to take charge of the estate of each one, and the proceeds to be used to educate them.

By the fifth clause of his will, he devised the entire residue of his estate, real, personal, and mixed, to his wife, Mary E. Bigstaff, for and during her natural life, and at her death to be equally divided between his four children, Thomas J., Samuel, and Fenton Bigstaff, and Lizzie Ragan, to be held for and during their natural lives, with remainder to their children at the time of their deaths, and if any of his children should die before or after his wife's death, without leaving living issue, then the part of his estate so devised to said child should revert and become a part of his estate, and pass under the provisions of the fifth clause of his will. He further directed that at the death of his wife, that his personal estate should be invested in real estate, and the title to same should "be taken, held, and to pass as hereinabove set out in the fifth clause of my will."

After his death the will was duly probated, and thereafter the widow, Mary E. Bigstaff, renounced the provisions of the will so far as same applied to her, in the manner and within the time prescribed by law for her so doing. In the division of his real estate, 375 acres of land was alotted to Thomas J. Bigstaff, to be held by him under the terms of the will, for and during his natural life, and at his death to pass to his children who might be living at that time, and if he should die without leaving living children, then to revert to the other heirs of the testator.

In a suit, prosecuted by the administrator with the will annexed, for a construction of the will and a settlement of the estate, the circuit court adjudged that a trustee be appointed to receive the portion of the personal estate to which Thomas J. Bigstaff and his children were entitled, under the fifth clause of the will, and ordered the administrator to pay over such part to the trustee. John S. Frazier qualified as such trustee, and there was received by him, under the judgment of the court, about $9,000.00. Under the will, Thomas J. Bigstaff is entitled to the income from the sum of money in the hands of Frazier, as trustee, for and during his natural life, and the principal of it then passes to the children of Thomas J. Bigstaff, who may be living at the

time of his death, and if there be none such, to revert to the estate of the original testator, to pass as provided by the fifth clause of his will.

The 375 acres of land allotted to Thomas J. Bigstaff during his life time is farming land and only useful for such a purpose. It appears that there was no substantial fencing upon the farm, nor any substantial barns, or cribs, or dwelling houses. For the purpose of making the property useful and available to him for farming purposes, Thomas J. Bigstaff constructed fencing upon the lands, at a cost of about $750.00. An old dilapidated barn upon the place was reconstructed and repaired, at an expense of about $350.00. There was no corn crib on the land, and Thomas J. Bigstaff caused to be erected a corn crib, at a cost of about $300.00. An old tenant house, which was scarcely fit for habitation was repaired, at a cost of about $500.00; a servant or tenant house near the residence was built, at a cost of about $750.00; a log house was erected on the farm, at a cost of $750. The dwelling house upon the farm was a large old time styled brick house, but which was greatly out of repair, and the life tenant caused it to be repaired, and furnished it with modern waterworks, lighting, and other improvements necessary for the use and enjoyment of it as a home, at a cost of $12,000.00. The improvements seem to be substantial and permanent. After making these improvements, Thomas J. Bigstaff, it seems, paid for same, and filed this suit against his trustee, Frazier, alleging that the improvements had increased the vendible value of the farm to the extent of $12,000.00, and that an investment of the funds in Frazier's hands, as trustee, in these improvements would be an investment in real estate, as directed by the will, and asking the court to require the trustee to pay over to him the personal property in his hands, in payment for the improvements. James Bigstaff and Alexine Bigstaff are the only children of Thomas J. Bigstaff, and they are infants, but over fourteen years of age, and they are made parties to this suit, and a guardian *ad litem* appointed for them, as the appellee, Thomas J. Bigstaff, is their statutory guardian. The guardian *ad litem* for the infants and, also, the trustee, demurred to the cross-petition of the appellee, Thomas J. Bigstaff, and the trustee filed an answer, in which he denied that the investment of the funds in his hands in the improvements

upon the farm of Thomas J. Bigstaff would be an in-
vestment in real estate, in accordance with the will of
J. M. Bigstaff. The cause was then submitted upon the
demurrer of the guardian *ad litem,* and the demurrer of
the trustee, and upon the answer of the trustee, and the
demurrer of Thomas J. Bigstaff to the answer of the
trustee, and upon the pleadings and proof, when the court
adjudged that the improvements placed upon the land
by the life tenant, Thomas J. Bigstaff, had increased its
vendible value to the extent of $11,000.00, and that an
investment of the funds in the hands of the trustee, to
the extent of $11,000.00 in the improvements, was an in-
vestment in real estate, within the meaning of the fifth
clause of the will of the testator, and directed the trus-
tee, that as it appeared that the life tenant had already
paid for the improvements, the trustee would pay to
him out of the funds in his hands, or which might here-
after come into his hands, to the extent of not exceeding
$11,000.00. The trustee and guardian *ad litem* for the
infants excepted to the judgment, and prayed an appeal
to this court, which was granted.

The question presented for decision is, whether pay-
ment of $11,000.00 of the trust funds in the hands of the
trustee, to the life tenant for these improvements is an
investment in accordance with the provisions of the will
of the testator, and whether the circuit court was in
error when it ordered the payment of the trust funds
to the life tenant on account of the improvements made
upon the lands by him.

It is always the duty of a trustee, in the administra-
tion of the trust fund, to look to the interest of both the
life tenant and the remainderman, where the fund
is the property of one for life with remainder to another.
It is his duty, where he is without specific directions,
in the instrument creating the trust, to so invest it as
to make the income profitable to the life tenant, and to
preserve the principal of the fund for the remainder-
man. It could not be contended, in the case at bar, that
the life tenant of the land upon which the improvements
are situated, could make any charge against the trust
estate, or against the remainderman, for the cost of their
construction. He knew the character of his title, and
made the improvements of his own volition, and it must
be presumed that he did so for his own benefit. In fact,
in his petition, he alleges that he made the improvements

in order to enable himself to more comfortably occupy the premises, and to make the lands available for his purposes. The general rule is that a tenant for life cannot lay out money in building on the land and charge it on the estate in remainder. Presbyterian Church v. Fithian, &c., 16 R., 582. In Mayes v. Payne, 60 S. W., 712, this court held, that a life tenant cannot lay out money in building on land, and charge it on the estate, or make a personal charge against the remainderman. The life tenant is bound to keep the premises in repair, but is under no legal obligation to undertake any improvements, and if he does so, it is a voluntary act of his own, which gives rise to no claim against the estate, or the reversionary interest in it. Caldwell v. Jacob, 22 S. W., 436; Mayes v. Payne, 60 S. W., 710; Culleton v. Keune, 18 R., 1065; Johnson v. Stewart, 8 R., 857; Sharp's Admr. v. Ball, 13 R., 65. Whatever improvements are placed upon the lands by the life tenant pass at the expiration of his estate to the remaindermen. The effect of the judgment below was to require the trustee to pay the life tenant for the value of the improvements out of a fund, in which the life tenant had a life estate, with remainder to the same persons, who own the remainder interests in the lands. This might be considered to be equitable, inasmuch as the remaindermen will receive the improvements at the end of the life estate if they then still exist, just as they will receive the principal of the trust fund, at the expiration of the life estate. It would, however, be an appropriation of the interests of the infants, in the fund, to the payment for things, which neither, in law nor equity, they are bound for.

The trust fund, which is sought to be appropriated in the case at bar, for the payment of improvements made by appellee upon the lands, is a fund held under an express trust. The will of the testator expressly provides that it shall be invested in real estate, and the title taken to appellee for life, and to the infant appellants, in remainder, subject to the conditions imposed by the fifth clause of the will. While houses and barns and permanent fencing are embraced in the term "real estate," it is only because of the fact, that they are attached to the land, and intended to be permanently situated upon it. The direction in the will as to how the title to the real estate, in which the trust fund was to be invested,

seems conclusive, that the testator had in contempla-tion the purchase of lands by the trustee, and not an investment of the funds in fences, or houses, or other improvements, attached to some tract of land. As to what property the fund should be invested in, is not left in anywise to the discretion of the trustee, or anyone else. If it was proper for the chancellor to direct that this fund be invested as sought for, the trustee could safely do it, without the advise of the chancellor.

In 39 Cyc., 405, the rule is stated as follows: "Where the author of a trust gives explicit directions as to the classes of securities in which the fund shall be invested, it is the duty of the trustee to follow the in-structions literally, and he will be liable for departing therefrom, unless no such investment as directed can be made, or the safety of the investment has become doubtful by reason of supervening circumstances, in which case it is the duty of the trustee to invest the fund in the best manner practicable under the circumstances." Transylvania University v. Clay, 2 B. M., 385.

From the fact that the testator could not have antic-ipated that his widow would renounce his will, and thus free the lands upon which the improvements are situ-ated from her life estate, and enable appellee to at once come into possession of them, and the other circum-stances, in proof, it is manifest that he intended that the funds should be invested in the simple purchase of lands, and not otherwise, and when he used the words "real estate," he meant and intended the freehold title to lands.

For the reasons indicated, the judgment appealed from is reversed, and this cause remanded for proceed-ings consistent with this opinion.