## Abney v. Pearson et al.

(Decided June 15, 1934.)

G. MURRAY SMITH for appellant.

ROSS & ROSS, D. ANDREW SHEARARD, and JOHN NOLAND, guardian ad litem, for appellees.

OPINION OF THE COURT BY JUDGE DIETZMAN—Reversing.

James M. Coyle died testate in the year 1920. Although not expressly set out in the record, it may be gleaned from the exhibits filed that at the time of his death he had four living children and descendants of three deceased children. We are informed in brief that there was another child who died in infancy. One of the children who had predeceased James Marion Coyle was a daughter, Ellen Coyle Pearson, who died in 1918, leaving issue. She had had nine children, of whom seven survived her, being the plaintiffs, now appellees, Gurty Pearson, Tilford Pearson, Fred Pearson, Atson Pearson, Lucy Bicknell, Millie Smith, and Sadie Berry. The plaintiffs, now appellees, Ethel Chappell and Lizzie Lakes, are her grandchildren by, as we are informed in brief, her daughter Isabel Pearson Isaacs, and the defendants, Ike Pearson, Jane Pearson, Johnnie Pearson, and Tressie Pearson, now appellees, all infants, are her grandchildren by, as we are informed in brief, her deceased son, Clayton Pearson. The appellant, Bertha Abney, a defendant below, is the granddaughter of James Marion Coyle, her mother having been Almeda C. Hymer, who died in 1905, leaving surviving her not only Bertha Abney, her daughter, but also E. B. Hymer, U. S. Hymer, and J. M. Hymer, her sons. Another daughter of James Marion Coyle, Belle Miller, predeceased James Marion Coyle, leaving surviving her her children, Logan Miller, Fannie Richardson, and Grace

M. Harrison. James Marion Coyle was also survived by his widow, Mary Frances Coyle. His will, made November 17, 1920, and duly probated after his death, reads as follows:

"1st. As soon as is convenient after my death I desire that all my just debts be paid.

"2nd. I give and bequeath to my wife, Mary Frances Coyle the house and lot on Jefferson Street where I now live, for her use and benefit during her lifetime, at her death to be sold and divided equally among our children, also I give and bequeath to my wife the sum of $500.00.

"3rd. It is my desire that all my property, both real and personal be disposed of as soon as convenient after my death and the proceeds to be distributed by my executor according to the terms of my will. In the event that my executor be alive at the death of my wife, that he hereby be empowered and directed to sell the house and lot given to my wife for her use and benefit during her life time and to divide the proceeds after the necessary expenses have been paid, equally among our children.

"4th. I give and bequeath to the heirs of my daughter, Ellen Coyle Pearson, the sum of $200.00.

"5th. It is my desire that a small monument or marker mark the last resting place of myself and wife.

"6th. The remainder of my estate, after the terms of this my will have been carried out, I desire to be equally divided among the children of myself and wife, Mary Frances Coyle.

"7th. I give and bequeath to Sarah Coyle, wife of T. J. Coyle, the sum of $300.00.

"8th. I hereby nominate and appoint J. L. Gay to be my executor of this will, hereby giving him full power to sell real estate and make title to same as well as if I were present and did same myself."

The executor received about $10,000. He made what he designated a final settlement on January 15, 1923, and no exceptions having been filed thereto, it was duly confirmed. The order of confirmation, however, did not discharge him as executor. The widow, Mary

Frances Coyle, died in December, 1930. In 1931, Bertha Abney bought from her uncles Albert Coyle and Tilford Coyle, sons of James Marion Coyle, their undivided interest in the real estate covered by the second clause of the will of James Marion Coyle. The day before, she bought from her brothers, E. B., U. S., and J. M. Hymer, their undivided interest in and to the same property. Thereafter and on February 19, 1931, J. L. Gay again qualified as executor of the will of James Marion Coyle. On March 28, 1931, this suit was brought by the adult children of Ellen Coyle Pearson and her two adult grandchildren, Ethel Chappell and Lizzie Lakes, against the other heirs of James Marion Coyle, and the four infant grandchildren of Ellen Coyle Pearson. The purpose of the suit was to obtain a construction of the will. The petition, inter alia, averred that the executor in the distribution he had made in the settlement of January 15, 1923, had paid to the heirs of Ellen Coyle Pearson as a class but per stirpes within the class $200 only, but had paid to each of the other children of James Marion Coyle, or the representatives of those who were dead, the sum of $1,393.50, and that he had made this discrimination because he had not correctly construed the will of James Marion Coyle. The plaintiffs prayed that the land covered by the second clause of the will be sold and that out of the proceeds they be first made equal with the other children or their representatives and that the balance of the proceeds be divided equally. The circuit court on final hearing entered judgment for the plaintiffs as prayed. Bertha Abney alone appeals.

The first question presented on this record is: What are the plaintiffs' rights under the will? It is provided by statute:

"When a devise is made to several as a class or as tenants in common, or as joint tenants, and one or more of the devisees shall die before the testator, and another or others shall survive the testator, the share or shares of such as so die shall go to his or their descendants, if any; if none, to the surviving devisees, unless a different disposition is made by the devisor. A devise to children embraces grandchildren when there are no children, and no other construction will give effect to the devise." Section 2064, Ky. Stats.

"If a devisee or legatee dies before the testator, or is dead at the making of the will, leaving issue who survive the testator, such issue shall take the estate devised or bequeathed, as the devisee or legatee would have done if he had survived the testator, unless a different disposition thereof is made or required by the will." Section 4841, Ky. Stats.

In Chenault's Guardian v. Chenault's Ex'rs, 88 Ky. 83, 11 S. W. 424, 426, where the testator devised the estate to the children of his brothers and sisters and the son of one brother had died leaving a son, Waller W. Chenault, this court on a careful review of the authorities said this:

"It therefore follows that the issue or descendants of those children of the testator's brothers and sisters who were dead at the death of the testator, whether they died before or after the will was executed, are entitled to the respective shares of the estate which their several ancestors would have taken if alive, and, as Waller W. Chenault has a right to the share that his father would take if alive, the judgment of the lower court is reversed, and cause remanded for further proceedings consistent with this opinion."

In Sloan v. Thornton, 102 Ky. 443, 43 S. W. 415, 417, 19 Ky. Law Rep. 1511, where the testatrix gave the estate to the children of her uncle John Wood, on a careful review of the question, this case was followed and it was held that the grandchildren, where any child was dead, took their parent's share in these words:

"And we are of the opinion that the proper construction of the fourth clause of the will of the testatrix in this case requires that the fund devised to the children of her uncle John Woods should be divided equally between the appellants and appellee, per stirpes."

To same effect see, on a like will and like facts, Barnhill v. Sharon, 135 Ky. 70, 121 S. W. 983. In Ruff v. Baumbach, 114 Ky. 336, 70 S. W. 828, 24 Ky. Law Rep. 1167, the testator devised the estate to his wife for life and at her death to his children then living. At the death of the wife the estate was divided among the four children then living to the exclusion of the children of a daughter who had died leaving issue. The

judgment in the circuit court in favor of the daughter's children was upheld by this court. See, also, Smith v. Miller's Adm'r, 47 S. W. 1074, 20 Ky. Law Rep. 910, and Evans v. Henderson, 68 S. W. 640, 24 Ky. Law Rep. 363; Carter v. Carter, 208 Ky. 291, 270 S. W. 760.

The above cases are conclusive here, for the will cannot be distinguished from those there construed and held to fall within the statute. The will here does not indicate a contrary intent. It is true that by the fourth clause he gives to the heirs of his daughter Ellen Coyle Pearson the sum of $200; but she had died not long before the will was written, and there is nothing in this to show that this was all they were to get; for the sixth clause of the will expressly provides that "the remainder of my estate, after the terms of this my will have been carried out, I desire to be equally divided among the children of myself and wife," showing clearly that the testator contemplated an equal division of his estate among his children.

2. May the plaintiffs be equalized out of the sale of this land as they request? Bertha Abney alone answered. The appellant rested her right to oppose the equalization requested by plaintiffs on the ground that the settlement filed by the executor in 1923 was a final settlement and as that settlement has not been surcharged, and was not by this action surcharged, it stood as a complete bar to the equalization here requested.

In the case of Stratton's Adm'x v. Farmer, 194 Ky. 782, 240 S. W. 741, 742, the question was presented whether or not an administratrix, who had settled her accounts, paid all the obligations of the estate, delivered all of the residue of the estate to the sole heir, and caused her official bond to be canceled, could institute and maintain an action as administratrix of her decedent to recover money due her intestate upon notes which were in the hands of another as his agent and of which she did not know at the time of the settlement of her accounts. In answering that question in the affirmative, we said:

"Until the case of Oldham's Trustee v. Boston Insurance Co., 189 Ky. 844, 226 S. W. 106, 16 A. L. R. 305, there was a dearth of authority in this state on the subject of when an executor or administrator is relieved from liability under his trust and is no longer able to institute or maintain an action in

his official capacity for the use and benefit of the estate which he represents. In that case, however, we held that a mere settlement of a fiduciary did not disqualify him to maintain an action or perform other duties of his office. The different states of the Union have statutes governing such matters. While some of them are similar in many of their provisions, they differ widely in others. Out of this diversity of legislation on the subject a great variety of judicial construction, opinion and determination has flowed. At common law the duties and obligations of executors and administrators were a continuing trust, which were not ended by the mere settlement of the accounts of the fiduciary, even though an order was entered at the time by a court of competent jurisdiction, confirming the settlement as final if after the entry of such order there were discovered other assets of the estate unadministered. Some states have changed this rule by statute, but Kentucky has not done so. Our statutes provide for the appointment of executors and administrators, and prescribe their duties, but there is no provision for their discharge, except for unfaithfulness, nor fixing a time when their right to maintain an action for the use and benefit of the estate which they represent shall cease. This being true, the common-law rule of holding the trust a continuing one still prevails in this jurisdiction.

"Although Mrs. Stratton, as administratrix, settled her accounts up to December, 1916, paid the obligations of the estate and turned over to the sole heir all of the remaining assets of the estate known to her at that time, and attempted to cancel her official bond, she was not finally discharged, or otherwise incapacitated as administratrix. Granting all the facts averred in the pleading concerning the cancellation of the bond of the administratrix, it is not shown that she was relieved on her bond. Indeed there was no direct order providing for her discharge. Her settlement did not terminate her trust, except to the extent of that part of the estate which was before the court at the time it was made. An order which does not discharge an administratrix, but merely settled her accounts, does not terminate the trust, but she continues to be the administratrix until the estate is fully and finally

settled. This is true, although the administratrix may in good faith believe that the entire estate is settled, and undertakes to have a final settlement of her accounts. If she thereafter discovers other assets of the estate unadministered, she may, as such administratrix, take charge of such assets or bring an action for the purpose of recovering such assets for the estate. The trust is a continuing one, ending only with the final settlement of the entire estate, unless sooner closed by death, resignation, or removal of said fiduciary from the state.''

In the instant case, the order confirming the settlement of 1923 did not discharge Gay as executor of the estate of James M. Coyle, deceased, and so under the Stratton Case, supra, his settlement did not terminate his trust. It was a continuing one, ending only with the final settlement and distribution of the entire estate, unless sooner closed by death, resignation, or removal of the fiduciary of the estate. In the case of Rau v. Rowe, 188 Ky. 524, 222 S. W. 1070, Mrs. Rowe brought suit to settle the estate of her deceased husband. The case reached this court, as that opinion points out in two appeals. On one of them a judgment was ordered by this court to be entered by the lower court settling the estate. Later Mrs. Rowe undertook by subsequent proceedings to claim out of some rents which had accumulated while the litigation above mentioned had been pending her widow's exemptions allowable by section 1403 of the Kentucky Statutes. These she had not claimed in her first settlement. She had also expended $282 for a monument which she had caused to be erected over the grave of her husband. She had made no claim for this sum in her first settlement. She asked that this sum be also paid out of the accumulated rents. Those who resisted these claims of Mrs. Rowe did so on the ground that she had not included these items in her first settlement. In response to this she pleaded that through mistake and inadvertence of herself in the preparation of her settlement, these two items had been omitted. In allowing these claims to be paid out of these accumulated rents, we said that the omissions of the claims from the first settlement having been occasioned through the mistake and inadvertence of Mrs. Rowe or her attorney, Mrs. Rowe was as a matter of common justice and right entitled to have these claims allowed out of assets which had subsequently come into the estate.

It is true that section 1067 of the Statutes, having reference to settlements filed by fiduciaries in the county court, provides that settlements so made and recorded shall be prima facie evidence between the parties interested. But as we have seen from the Stratton and Rowe Cases, the executor not having been discharged when he made his settlement in 1923 continued as such, and that when he now comes to distribute other assets which have come into his hands for distribution he may, if there has been a mistake made in the first settlement, correct the same in a subsequent settlement. The first settlement is deemed only prima facie correct as between the parties. This does not mean that it may not, if shown to be incorrect, be upset in the proper manner, and as we have seen, if it be shown to be incorrect, as was done in the instant case, it may be corrected in the distribution under a subsequent settlement as was done in the Rowe Case.

3. From what has been said, it obviously follows that the request for equalization was not barred by limitation, since it was the duty of the executor to make the adjustment in his accounts if there was any need for such when he came to make his final and last distribution.

4. Did the plaintiffs lose their rights by estoppel? It will be recalled that from 1923 to 1931 the plaintiffs by their conduct acquiesced in the construction of the will that the executor then put upon it. Relying on that construction and their acquiescence therein, Bertha Abney bought out the shares of Albert Coyle, Tilford Coyle, E. B. Hymer, U. S. Hymer, and J. M. Hymer in the James Coyle estate. To the extent of these interests so bought, the adult plaintiffs are clearly estopped. Not so with the infant heirs of Ellen Coyle Pearson, since of course they have the right, up to the time they become of age and for the proper time thereafter, to question the construction of the will made by the executor in 1923. Of course, to the extent that Bertha Abney inherited an interest from James M. Coyle, there is no estoppel, since as to such interest she has not changed her position on the faith of any conduct on the part of her adult opponents. The court should have adjudged that the adult heirs of Ellen Coyle Pearson are estopped to claim an equalization as against Bertha Abney in so far as the interests of Albert Coyle, Tilford Coyle, E. B. Hymer, U. S. Hymer, and J. M. Hymer which she

bought are concerned. However, in all other respects, its judgment was right.

Except to the extent that the adult heirs of Ellen Coyle Pearson are estopped as set out in this opinion, the judgment of the lower court is affirmed, but as to such estoppel it is reversed, with instructions to modify the judgment in the lower court in accordance with this opinion.

Whole court sitting.