## McBride v. McBride et al.

(Decided Feb. 7, 1936.)

D. A. McCANDLESS and JOSEPH M. HAYSE for appellant.

ROBERT G. WOLF and HENRY J. TILFORD for appellant.

OPINION OF THE COURT BY JUDGE PERRY—Affirming in part and reversing in part.

This appeal involves a settlement of the estate of James McBride, who died testate April 6, 1913, leaving surviving him a widow and five children, unto whom and to three certain named charities, provided for by codicils to his will, he devised his estate. The source of the controversy, here presented, is the will of James McBride.

On March 11, 1932, Amelia McBride, one of the three daughters and devisees of the testator, filed her petition against the defendants John S. McBride and Henry B. McBride and other devisees under the will, for a settlement by the aforesaid defendants of their accounts as executors and testamentary trustees of the estate of James McBride and for recovery of her distributive share.

The provisions of the will, the construction of which is here involved, are as follows:

"Second: I will, bequeath and devise unto my sons, John S. McBride and Henry B. McBride, all of my real estate of whatever kind to be held in trust by them and each of them for the sole benefit, use and enjoyment of my wife, Emma J. McBride, during her lifetime, and said John S. McBride and Henry B. McBride are hereby appointed trustees for that purpose and instructed and directed to safely control and manage my said real estate for the purposes hereinbefore mentioned and *to turn over to my wife, Emma J. McBride, all the rents, income and profits arising from said real estate, after the necessary payment of taxes, insurance and necessary cost of maintaining said property and to carefully control and manage same for the benefit and use of my said wife. Said trustees shall have full authority and right, with the consent of my said wife, Emma J. McBride, to sell for the purposes of reinvestment,* any or all of said real estate which they may deem advisable to sell. (Italics ours.)

"Third: I desire and direct that upon the death of my wife, Emma J. McBride, all of my personal estate shall go absolutely and be divided equally between my surviving children and heirs at law.

"Fifth: I appoint my two sons, John S. McBride and Henry B. McBride, executors of this my last will and testament."

To this will, executed April 17, 1912, by James McBride, he added on April 19, 1912, a codicil thereto and on December 15, 1912, an additional codicil, both of which were probated as parts of the will, and read as follows:

First codicil: "I, James McBride, of Louisville, Jefferson County, Kentucky, being of sound mind and disposing memory, do make this my codicil, hereby confirming my last will and testament dated Apr. 17, 1912. I direct that *in case a sufficient amount of my real estate owned by me at the time of my death is sold during the lifetime of my wife* Emma J. McBride, in accordance with

the terms and provisions of my said will, and if sufficient funds be on hand as realized from any such sale, that my executors pay, *with the consent of my said wife,* Emma J. McBride, the following sums of money to the following charitable institions, to-wit: to the Little Sisters of the Poor, $1,000.00, to the Saint Thomas Orphanage of Louisville, Ky., $1,000.00, to the Sisters of Mercy on East Broadway, Louisville, Ky., $1,000.00." (Italics ours.)

Second codicil: "I, James McBride, of Louisville, Jefferson County, Kentucky, being of sound mind and disposing memory, wish that the provisions made by codicil dated April 19, 1912, *be put into effect immediately after sale of real estate as per provisions made in said codicil,* also that five hundred dollars ($500.00) be used in having Masses said for the repose of my soul." (Italics ours.)

It is to be observed that by this will the testator devised all of his real estate to his two sons, John and Henry McBride, to be held in trust by them for "the sole benefit, use and enjoyment" of his widow, the trustee sons being directed to pay her the *net income* therefrom, and the will further directed that, upon the widow's death, all of the real estate should go absolutely and be equally divided between the children and heirs at law of the testator. Also in addition to the testator's two sons, John and Henry, named as trustees, he left surviving him his widow, Emma McBride, and three daughters, the appellant and plaintiff below, Amelia McBride and the defendants, Mrs. Mary J. Pilson and Mrs. Emma S. Brachey. Further it is to be observed that the will vests full authority in the trustees, with the widow's consent, to sell any or all of the real estate for purposes of reinvestment.

Further it is shown that shortly following the death of James McBride in 1913 his will was duly probated; that his sons, John and Henry McBride, duly qualified thereunder as executors and trustees of the estate, with the defendant National Surety Company as bondsman, and entered upon the administration of their trust; that as such they filed in 1915 in the Jefferson county court their first periodical report, where-

in they reported that they had fully administered upon the personal property of some $1,500 coming into their hands, as directed by the will, and that there then remained in their hands of the trust estate only a certain real estate property, situated on Fifth street, Louisville, Ky., which was valued at $10,000, and no part of which had been sold; also that they had paid themselves no part of certain loans claimed made by them to their father, in amounts of $855 and $125, respectively, as there had not come sufficient funds into their hands with which to satisfy their claims against his estate.

The report so made was approved and duly recorded.

It is further shown that during the intervening period between the making of this report and the later sale, made partially on time payments, of this trust realty, the estate was practically without income, as the widow, with some of her children, had occupied this property during the period as a home, and all had jointly worked and contributed to the support of their mother and the upkeep of the home property; that upon its later sale in 1920 for $17,000 some $7,000 of the proceeds were reinvested, with the consent of the mother, in a new home on Hill street, Louisville, and the remainder thereof was retained and handled for the use and benefit of the mother, by the trustees, as they were directed by the will to pay her the net income therefrom, after payment of taxes and maintenance of the newly acquired Hill street home, held as the trust real estate.

Also it appears that, at about the same time this estate or trust property was sold, the widow also sold certain real estate personally owned by her for practically the same amount of $17,000, which was also turned over to the trustees to manage and control for her benefit.

The record also shows that in 1920 Amelia McBride, here the appellant, suffered a breakdown in health, by reason of which she was placed in a sanatorium for treatment, and the expenses incurred therefor while in the sanatorium were advanced and paid by the trustee John McBride. It is further shown that, after a short period of improvement spent at home,

again in 1922 she suffered a complete mental breakdown and was taken to the state hospital at Lakeland, where she was confined until paroled in 1929. In 1931 she was adjudged restored to her property rights.

During the period of appellant's confinement at Lakeland, in August, 1924, her mother, Emma McBride, the life beneficiary under the will, died, and thereupon the trustee, Henry McBride, was appointed to serve as Amelia's committee, and who as such (it is alleged) agreed with the other heirs that they would suspend the distribution and settlement of the estate until the removal of the disability of their sister. During this time of Amelia's incapacity, following her mother's death in 1924 until her parole in 1929, a sister, Mrs. Pilson, was left in the sole use and occupancy of the Hill street home, rent free, the estate trustees assuming the burden of its upkeep and maintenance and payment of the taxes thereon.

Upon Amelia's later recovery and parole from Lakeland, she returned to their jointly owned Hill street home, where she occupied, it is alleged, under somewhat unpleasant conditions, a small bedroom in the property and had joint use with her sister, Mrs. Pilson, of the dining room and kitchen.

It appears that the appellant, upon being restored to her property rights in 1931, requested of the defendant trustees an accounting and payment to her of her distributive share, as a devisee, in her father's estate, which they refused her, whereupon she then filed this suit, seeking a settlement of the estate.

To her petition the defendant trustees, the National Surety Company (their surety) and her two sisters, Mrs. Pilson and Mrs. Brachey, filed answer. Also the three named charitable institutions, to whom conditional bequests had been made under the codicils of the will, filed cross-petitions, seeking recovery of the bequests made them. By further pleadings all affirmative matters pleaded were controverted and issues joined thereon.

A reference of the cause to the commissioner was made, who, after taking proof, duly filed report of his findings upon the matters referred to him therefor.

Upon later submission of the cause for judgment

on demurrers to the cross-petitions of the three charitable institutions to whom bequests were made under the codicils, and on exceptions to the report of the commissioner, the learned chancellor handed down a written opinion, and, in conformity with the conclusions therein set out, it was adjudged that the demurrers to the cross-petitions of the Convent of the Sisters of Mercy, etc., be sustained and their petitions dismissed. From this ruling they here appeal.

Further, the learned chancellor adjudged that the trust relative to the personal estate devised by James McBride terminated upon the death of the life beneficiary, Emma McBride, and that the trustees should be given a year in which to settle the estate without liability for interest during such time; also that the trustees were not chargeable with interest upon the trust property after the date of April 3, 1931, when plaintiff was shown to have been restored to her property rights; that the trust personalty, for which an accounting by the trustees was ordered, was adjudged to be the balance of proceeds of sale of the real estate, after paying expenses of such sale and the consideration and expense attending the purchase of the Hill street property; which net remaining amount, at time of termination of trust, was fixed at $9,587.16. Further, there was allowed to John McBride his claim of $855, with interest thereon from October 6, 1913, to April 3, 1931 (amounting to $877.75), as a debt owing him for money loaned the testator in his lifetime; also there was allowed him the further amount of $1,145.81, with interest thereon from date of checks to April 3, 1931, of $912.48, for advances claimed personally made the estate.

Further it was adjudged that the appellant's distributable share of the estate was $1,606.61, plus her payment of taxes, with interest thereon of $260, less advances found made her of $765, which, after deduction, left $1,101.61 as the net distributable share due her as of April 3, 1931, and for the payment of which she was adjudged liens on all the personal estate, including cash and securities of every kind and character in the hands of the trustees.

As to the real estate, it was adjudged that upon the death of the mother, for whom the same was held

in trust for the period of her life, upon such trust terminating in 1924, it went as directed by the will equally to the five children as tenants in common, when, as such, each of them had the right to have partition or sale and division of proceeds made among them under section 490 of the Civil Code of Practice; however, since the rule in such case is that the occupancy of one is the occupancy of all, neither the trustees nor Mrs. Pilson, being alike her cotenants, were indebted as for rent for Mrs. Pilson's use and occupancy of the property during the period stated, and that appellant as cotenant was properly chargeable with her pro rata share in the payment of the taxes and upkeep thereof, without deduction therefrom under color of rents owing her, there being no proof as to what rent, if any, the defendant Mrs. Pilson received during the period stated of her use and renting of a part of the Hill street property or of the rental value of the whole property.

Further the court adjudged that the appellant's petition be dismissed against the National Surety Company.

From so much of this judgment as fixed the termination of the trust estate at the death of Mrs. Emma McBride and the trustees' duty to then make distribution and as further failed to recognize their right as trustees to retain and continue the investment of trust properties and to postpone settlement to April 4, 1931, when Amelia McBride was restored to her property rights, John S. McBride, Henry B. McBride, Mrs. Mary Pilson and husband, and Mrs. Emma S. Brachey and husband prosecute a cross-appeal.

Also Amelia McBride excepts to so much of the judgment as allows the claim of John McBride for $855 with interest; also to so much of it as allows the executors and trustees credit for the full amount of John McBride's claim of $1,145.81 and interest, upon the ground that $840 of the amount claimed is shown to have been advanced by him to their mother, Emma McBride, out of his private means and in excess of the trust estate income received during their mother's lifetime, and now improperly adjudged to be made a charge against the corpus of the estate; and also excepts to the rulings of the court in refusing to charge

rentals in her favor against Mary Pilson for one-fifth the total rental value of the Hill street property from March, 1924, until April 3, 1931. Further she excepts to the refusal of the court to charge the trustees with interest on the trust personalty wrongfully retained after April 3, 1931, the day upon which she was restored to her property rights, and also to the court's ruling in dismissing her petition against the National Surety Company and refusing to enter personal judgment against it.

Others of the many exceptions, of a omnium gatherum character, which we deem to be altogether without merit, it is not needful to here either set out or discuss.

After a careful consideration of this vexed situation of jarring and conflicting claims and charges among the testator's children, inter sese, as to their relative rights as devisees under this ineptly drawn will of the testator, we will now undertake to determine the stated contentions presented by the appeals and cross-appeal.

First, as to the appeal of the devisees named in the codicil from the judgment refusing them recovery of the bequests therein recited, we deem it sufficient to say that we find ourselves in harmony with the court's interpretation of the testator's intention as expressed in the codicils, that the bequests therein provided for were directed and meant to be payable to the named legatees only upon the condition of his widow's consenting to their payment. Their payment involved for her the deduction of the said amounts from the corpus of the trust estate, the income from which was by the will devised and directed paid her. The learned chancellor was of the opinion that the testator did not mean to deprive his widow of this provision of his will made for her benefit, except upon the condition that same was agreeable to her and that she would consent to it. It may be conceded that the said legatees' rights under these codicils of the will were to be determined by what was ascertained from their language to be the intention and desire of the testator with respect to the payment of these bequests. This intent, as so ascertained by the chancellor, was that the bequests were only to be paid upon the consent of his

widow thereto, which it is pleaded and shown was not given by her. This construction of the bequests as conditional is strongly supported and justified by their terms. It therefore results that the recovery sought against the defendant trustees of the conditional bequests was not to be sustained, and therefore we conclude that the court's ruling in so holding is not to be disturbed. We do not regard it as needful to cite authorities supporting this fundamental principle requiring that full and controlling effect be given the meaning and intent of the testator, as ascertained from the chosen language of his will, in determining the scope and character of the disposition made of his estate, by its provisions.

Next, turning our attention to the contentions presented and strongly urged by Amelia McBride upon her exceptions to the judgment rendered, the first of which is that the court erred in allowing to the appellee trustee John McBride the sum of $855 and interest, alleged advanced by him to his father during his lifetime as a loan:

Appellant, in support of this contention, urges that the court erred in its allowance, by reason of the fact that the said claim was never properly authenticated or verified. This claim was evidenced by numerous canceled checks, purporting to have been signed by John S. McBride and payable to James McBride and indorsed by him. The commissioner reported that in his opinion the claim should be disallowed, upon the ground that claimant had not complied with section 3870, Kentucky Statutes, in verifying his claim. We find that the proof supports this contention and that the supporting affidavit of Mrs. Brachey was at best but a statement of her conclusions rather than facts upon which she based her opinion that the claim should be paid. While we do not by this mean to reflect upon the integrity of claimant, yet we are of the opinion that claimant's failure to establish his claim against the funds in his hands as trustee, by its proper verification, defeats his claim, as by Kentucky Statutes, sec. 3874, it is provided that a claim, unless supported by a proper affidavit, should not be paid by the executor, and we feel it would be an unwise departure from this salutary rule to allow its recovery. Further, we are unable to agree with appellees' contention that, such

claim having been presented and allowed them, in their periodical settlement made with the court in 1915, its further review or surcharge is now foreclosed thereby; such is not the law of this state. Abney v. Pearson, 255 Ky. 394, 74 S. W. (2d) 465.

We are therefore of the opinion that the learned chancellor erred in allowing the claim, with the result that plaintiff is adjudged entitled to recover, in addition to the award made her, a one-fifth part of the amount of said debt and interest allowed thereon for which amount the trustee was erroneously adjudged credit.

Appellant next contends that the court erred in allowing credit to the appellee and trustee John Mc-Bride in the sum of $1,145.81, with interest of $912.48. This claim was represented by numerous checks issued by John McBride individually prior to the sale of the real estate and payable to the estate of John Mc-Bride. It appears that of these checks, aggregating the amount of $1,145.81, only four of them, totaling $305 purported to have been given for insurance, taxes, and maintenance, leaving the sum of $840, which it appears was paid by the trustee to his mother, Emma McBride, as a contribution to her support and needs, or as an advancement of income to her and for his reimbursement therefor, he is now asking that the same be made a charge against the corpus of the trust estate. It was here the duty of the trustees, where the trust was for the benefit of one for life, with remainder to others, to look and act to the interest of both impartially. Bigstaff's Trustee v. Bigstaff, 165 Ky. 251, 176 S. W. 1003.

We are of the opinion that the court erred in its allowance to the trustee of this amount to the extent stated, of $840 and interest thereon, as same represented payments advanced to his mother out of his individual means and not out of the net income derived from the trust estate. The direction of the will is explicit and is clearly restrictive upon the right of the trustee sons to pay to the widow any part of the corpus of the trust estate. They were directed to pay her only the *net income* derived from the estate or such surplus part thereof as remained after paying the taxes and upkeep of the trust real estate. Therefore the trustee, under the express limitations of the will, in paying or advancing to the mother funds in excess of the net income derived from the trust estate, clear-

ly exceeded his authority. If recovery is to be had therefor, it must be upon the theory of a loan made the mother, for the payment of which her personal estate was amply sufficient and to which trustee must look. The item of this advance was somewhat confused and obscured by the confusing method followed in keeping the trust account—and hardly met the requirement of the rule charging trustees with the duty of keeping plain, true, and accurate accounts (Smallwood v. Lawson, 183 Ky. 189, 208 S. W. 808) and to make due and proper reports thereof. No further report was here made after the first in 1915, until after trustees were sued for a settlement of their accounts in 1932.

Appellant further contends that the court erred in confining the payment of interest upon the trust personalty to the period between July 1, 1925, and April 3, 1931. We fail to follow the supporting reason suggested for this limitation of the interest period to the time appellant was restored to her property rights, as the delinquent trustees did not at such time upon her demand, pay her the distributive share of the estate, but continued to hold same as trustees de son tort until the later suit and judgment against them therefor. We see no legal grounds for relieving the trustees of the interest upon the trust funds in their hands, while they continued to wrongfully withhold and manage the same beyond the time, as adjudged, when they were rightly obligated to properly distribute it among the devisees upon the termination of the trust under which same was held. Therefore we conclude that the delinquent trustees should be chargeable with interest during the whole period of their default in failing to make a due distribution of the trust fund distributable upon its termination. The adjudged pardoning of their delinquency for such period of time results in the loss and penalizing of the innocent appellant, of which we do not approve as appropriate.

Further, we are of the opinion that the court erred in the dismissal of plaintiff's petition as against the National Surety Company. In defense of the court's unsound ruling, the appellees urge that the same, even if improper, was not prejudicial, in that the defendant company is now insolvent and has been placed in the hands of a receiver by a foreign court. We do not feel, however, that such fact, if true (but which

is not here pleaded), would serve to deny to appellant the right to a judgment against the defendant surety. It is not claimed that such steps, if taken at all, were taken before this suit was filed, in which case it has been declared that the law of this state is that the plaintiff would be entitled to a personal judgment against the surety. Black Hawk Coal Co. v. Hazard Fruit Co., 214 Ky. 364, 283 S. W. 110; 23 R. C. L. sec. 51, p. 48; 53 C. J. sec. 672, p. 404, and sec. 674, p. 405.

As to the further and final contention of appellant, that the court erred in not awarding her rent against the cotenant of the trust property after the termination of the trust or following the mother's death in 1924, we conclude that this contention is not to be sustained, for the very sufficient reason, as found by the learned chancellor, that upon the death of the mother the trust in the real estate, as created by the will, terminated and passed, according to its further direction, to appellant and her four brothers and sisters as tenants in common, rather than remained in the hands of the trustees as a continuing trust. Such being the case, and the trust having terminated, each of the said devisees, so occupying the status of contenant, was entitled to enforce his or her rights as such under section 490 of the Civil Code of Practice, by having partition or sale and division made of the property. Such being their right, it follows that the property was no longer legally under the control of the trustees, and they are not called upon to account for, nor are they responsible for, any rent that might be owing by Mrs. Pilson for her sole occupancy and exclusive use and renting out of the jointly owned property during the period stated, whatever might be the liability of Mrs. Pilson or the committee therefor.

We now turn our attention to the consideration and disposition of the matters urged for reversal upon cross-appeal by appellees. They contend that the court erred in adjudging them to account for the trust estate according to its value upon the termination of the trust, taking place upon the death of Emma McBride in 1924, and in holding that their subsequent and unauthorized handling and reinvestment of the trust funds thereafter were done at their own risk and responsibility for any loss or depreciation.

The duty of the trustee upon the termination of

the trust is to take the appropriate steps for winding up the estate by making distribution of it—and his power to make further investments ordinarily ceases. A trustee's failure to make distribution is a violation of his duty owing beneficiary, and if, as a result of such breach of duty, loss or depreciation in value of the property is caused, the trustee is chargeable with it. Restatement of Law of Trusts, sec. 205, comment a, sec. 201.

The court having properly adjudged the termination of the trust to have occurred upon the death of the widow, Mrs. McBride, it follows that the trustees' continued retention and control of the trust estate thereafter was had by them as trustees de son tort, whereby their retention of the trust estate being wrongful, they assumed the responsibility for its subsequent loss or depreciation. We think that such a ruling was clearly within the well-established rule applicable to such case and within the right and sound discretion of the chancellor to invoke upon the admitted facts of the trustees' handling of the trust estate as was here shown.

Therefore the judgment is upon the original appeal affirmed in part and reversed in part, as hereinabove set out, and affirmed upon the cross-appeal of appellees, and the cause remanded, with directions to enter judgment in conformity with this opinion.